## ARK-MO ZINC COMPANY *v.* PATTERSON.

Opinion delivered July 2, 1906.

1. CONTRACT—PERFORMANCE.—Where the parties to a contract for the construction of a manufacturing plant agreed that, after its completion, it should be tested, and should show a capacity to do certain work, no recovery can be had thereunder if on completion the test failed to show a substantial compliance with the requirements of the contract. (Page 513.)

2. SAME—CONSTRUCTION.—Where, in a contract for the erection of a manufacturing plant, it was stipulated that the plant should be built by plaintiff under the direction of a referee selected by defendant, the fact that such referee was present during the progress of the work and failed to exercise his right of disapproval while the work progressed did not estop defendant from rejecting the completed plant, where the contract stipulated for the right of acceptance or rejection on final test after completion of the work. (Page 516.)

3. SAME—BREACH—RECOVERY OF PAYMENTS.—Where a contract whereby plaintiff agreed to erect a manufacturing plant for defendant stipulated that defendant should make partial payments during the progress of the work, which were made, and that the work might be accepted or rejected after completion if it failed to come up to the requirements of the contract, the amounts so advanced, with interest from the dates of payments, are recoverable on the work being rejected for failure to comply with the contract. (Page 516.)

Appeal from Marion Chancery Court; *T. H. Humphreys,* Chancellor; reversed.

### STATEMENT BY THE COURT.

The plaintiff, G. M. Patterson, instituted this suit in the chancery court of Marion County against the defendant, Ark-Mo Zinc Company, a New Jersey corporation doing business in this State, to recover the contract price for the erection of a concentrating and ore-dressing plant at the "Climax" zinc mine in Marion County, owned and operated by the defendant, and to enforce a statutory mechanics' lien therefor. An unpaid balance of $892.33 is claimed on the original contract price, and the further sum of $781.36 for extras, making a total of $1,673.69 alleged to be due and unpaid.

The contract between the parties, whereby the plaintiff undertook to construct the plant, contained the following clauses, viz.:

"1. The second party shall furnish, build, erect, install, complete and place in good running order, satisfactory to first party, the said plant, according to the specifications and blue· prints hereto annexed, and by reference thereto herein is made a. part hereof, and second party shall furthermore furnish and install all machinery, lumber, hardware and other material, together with all labor necessary to complete the said plant.

"2. The same shall be furnished in a good, workmanlike and substantial manner to the satisfaction and under the direction of W. N. Allen, or under such other person as first party shall select for that purpose, to be certified under the hand of the· said W. N. Allen or by first party. * * *

"6. Should any dispute arise concerning the true construction or meaning of the specifications, the same shall be decided by the said W. N. Allen, or such other person appointed by him or by first party in good standing, and his decision shall be final and conclusive. * * *

"8. After completion of the plant and upon due notice by· second party to first party or to said W. N. Allen, given personally or by registered letter at least ten days prior to a day to be· therein fixed, the said plant shall be tested by being operated continuously for a period of five days under the control and direction of the said W. N. Allen, or any person appointed by first party as hereinbefore provided. The test must show to the satis-- faction of the said W. N. Allen, or such other person appointed by the first party, that the plant as a whole has been built in conformity to this agreement, and that it will crush and properly clean in ten hours or less at least fifty tons of ore from the said· mine, or ore of a similar character to that of said mine. * * *

"10. First party shall pay to second party, as the sealing· and delivery of this contract and the bond hereto attached, $500. First party shall pay second party $2,000 when said plant, including the machinery, lumber, hardware and all parts thereof, are· delivered on the property of the Ark-Mo Zinc Company at said Climax mine. $599.53 shall be paid when the plant is completed· and accepted and turned over to the owners in good condition, and the balance, $1,000, after the said last payment and accept-- ance."

The specifications attached to the contract set forth in detail·

the kind of machinery to be furnished and the manner in which the plant should be constructed, and concluded with the following provisions, viz.:

"Contractor to furnish all machinery, lumber, labor and other material necessary to complete said mill. The contractor will be and is bound to give an approved bond in the sum of the total contract price of the mill, to secure the faithful performance of his part of the contract. Contractor to start up mill and run same for a period of five days to demonstrate the correctness of his work. Owners of mill to furnish crusher, feeders and engineer. These specifications and two blue print drawings comprise a complete mill, tried and running, whether every item is specified or whether shown in blue-print details. The said concentrating and ore-dressing plant is to be finished on or before the 15th day of July, 1902, or as early as possible for the contractor to do so, it being understood that the day fixed is a later day than the one estimated upon during preliminary negotiations. If the said plant is not finished at the time mentioned, then the said contractor shall pay as liquidated damages the sum of $7.50 per day for each day's delay after said day."

The defendant filed its answer denying that the plaintiff had complied with the contract by constructing the plant in accordance with the terms of the contract and specifications, alleging that the plant had not come up to the test provided in the contract; that it was so defective as to be practically of no use, and was not satisfactory to said W. N. Allen or defendant, and had been rejected, and that defendant had paid to the plaintiff the sum of $3,207.20 on said contract price. The answer was made a cross-complaint against the plaintiff and the sureties on his bond, with prayer for recovery of said sum advanced and also damages on account of the plaintiff's alleged failure to comply with the contract. Alleged defects in the plant are set forth in detail in the answer as follows:

"The boiler is improperly and defectively set, the inside walls in the fire box having fallen in, and being in a dangerous condition; that all steam connections are faulty and so arranged that, when it became necessary to close down any one department of the mill, all must be closed; the engine is defective in its connections, and did not work at all satisfactorily, and had a decided

pound in the cylinder, and would wear it out in a very short time. The follower catches and hammers at each revolution. The rolls are not set on a solid foundation, and are insecure and dangerous. The crusher is not set on a solid foundation or anchored, and is not true upon its base, and is insecure and dangerous. The screen is hung insecurely, and is dangerous. The main line shaft is not properly set, and is unable to stand the strain that operation would cause. The elevator is improperly constructed, and permits a constant waste of ore. The ore bin is improperly constructed, and would not sustain the weight it was intended to sustain, and is broken. The hoister house is improperly and insecurely constructed; the vibrations, when the hoister is in operation, being so great that it renders it difficult for the hoisterman to perform his duties. The steam connections on the hoister are so leaky that it is impossible to operate it on account of escaping steam, without wrapping the joints with cloth; and the building is improperly and defectively constructed. That it will not crush and properly clean in ten hours or less at least 50 tons of ore from appellant's mine, or ore of a similar character to that of said mine, and that there are many other defects in the construction of said plant. That, after a test of said plant by appellee and said plant being defective and not according to contract, the same was rejected, and was not satisfactory to said W. N. Allen or appellant, and, although promptly notified of such defects the appellee refused to remedy same, and said plant was closed and tendered to appellee, and appellant still tenders same to them."

The chancellor made the following findings of the facts, viz.:

"W. N. Allen, the director of the work, was on the ground about three days out of the week while the work was progressing, according to his own evidence, and more of the time according to the weight of evidence. The machinery was of the kind and quality provided for in the contract. There were some defects in the construction of the building and installation of the machinery, and some changes and modifications in the plans and specifications, yet upon the whole there was a substantial compliance with the contract on the part of the contractor. The changes and modifications of the plans and specifications con-

sisted in roofing the building shingle fashion instead of being batted, a slight change in the location, a decrease in the size of the jig room of four feet and two inches in the fifth cell of the jig. Any of these changes could be observed by a casual observer. The defects consisted of the floor lacking sufficient bracing, thickness of the floor and failure to bat the hoister house; the failure to put a mudsill lengthwise under the support to the ore room; the failure to line the mouth of the elevator and three pipes with iron; the failure to place a fourth girder, box and fixtures in the thirteen-foot space to support the main shaft; the failure to exactly plumb the piles in the piling foundation under the jig room; the failure to place sufficient piling under the west wall of the boiler and engine room, and to set the crusher on a solid foundation, and to sufficiently line the fire box under the boiler. None of these defects were intentional or willful on the part of the contractor, and most of them could be seen and detected during the construction of the plant by a person competent to direct the construction of a mill and receive same. The jig was constructed in the manner provided in the contract, except the fifth cell, which was a little smaller, but the fifth cell neither takes from nor adds to the capacity of the mill. I find from the whole evidence that it was the duty of respondent to furnish water necessary to operate the mills, which it has never done; that both parties are in possession of the mill; that the capacity of a mill is largely due to the number of jigs and water supply. This contract provides for only one jig. The mill was not completed for thirty days after the time provided by the contract. After the mill was completed, respondent expended $700 or thereabouts trying to get a water supply without insisting or even requesting or demanding that the contractor furnish water. The respondent has never received the mill, and both parties are in possession thereof, contending that the failure of the mill in the attempted tests to properly perform its functions and come up to the required running capacity is due to the neglect and failure of each other."

A decree was rendered in favor of the plaintiff for the amount claimed, after deducting the sum of $225 which was allowed to the defendant as liquidated damages of $7.50 per day on account of delay in completion of the plant. The defendant appealed.

*Seawel & Seawel,* for appellant.

1. Substantial performance permits only such omissions or deviations from the contract as are inadvertent or unintentional, are not due to bad faith, do not impair the structure as a whole, may be remedied without doing material damage to other parts of the building in tearing down and reconstructing, and may without injustice be compensated for by deductions from the contract price. 64 Ark. 34; 9 Cyc. 603; 6 *Ib.* 57, 58; 30 Am. & Eng. Enc. Law (2 Ed.), 11224.

2. There was no waiver of substantial performance. 51 Pa. St. 473; 3 Ia. 209; 3 Ark. 324, 336; 4 Quebec, 451, and cases *supra.*

3. If the defects were unsubstantial and capable of remedy, the burden of proving the cost thereof was on the appellee. 163 N. Y. 220 *et seq.;* 6 Cyc. 98, and cases cited; 30 Am. & Eng. Enc. Law (2 Ed.), 1224.

4. Having contracted to construct the mill to the satisfaction of appellant, same to be certified by appellant or agent, a substantial performance on the part of appellee would not be sufficient to entitle him to recover. 48 Ark. 522; 68 Ark. 187; 50 Mich. 565; 24 Fed. 893; 11 Hun (N. Y.), 70; 108 Pa. St. 291; 66 Wis. 218; 68 Mich. 101; 120 Pa. St. 69; 43 Ill. 445; 76 Va. 604; 95 Cal. 626; 22 Barb. (N. Y.), 606; 99 Mass. 183; 173 Mass. 356; 7 Gray (Mass.), 139. See also 6 Cyc. 70-77; 30 Am. & Eng. Enc. Law (2 Ed.), 1244, 1237, 1283, and cases cited; 77 Hun (N. Y.), 337.

5. The mill was worthless; its capacity less than the contract specified; would not properly clean ore; and rescission was the proper remedy. 111 Ia. 426; 30 Am. & Eng. Enc. Law (2 Ed.), 1274; 2 Ark. 388; 6 Cyc. 75; 94 Ia. 607; *Ib.* 713; 61 Ark. 315; 54 Ark. 423; 66 Ark. 433; 6 Cyc. 63, 24, 27, *et seq.,* 75; 30 Am. & Eng. Enc. Law (2 Ed.), 1212, 1226.

*G. H. Perry,* for appellee.

1. By the terms of sections two and six of the contract, Allen was in effect made the architect whose duty it was to supervise the construction of the work and pass upon the character of the material being used therein from the beginning and from time to time as the work progressed. 5 L. R. A. 270. Standing in this relation, not only are his decisions, made in good faith

and without concealment of defects by the builder, binding on the appellant, but, if he failed to make objection to the work, his approval may be presumed. 39 Ohio, St. 1; 97 U. S. 398; 109 U. S. 618; 114 U. S. 549; 52 Pa. 217; 84 Ill. 226; 14 Gratt. 308; 33 Wis. 332; 1 Beach, Mod. Law Cont. 141. The question is, not whether the work was done to the entire satisfaction of W. N. Allen, but whether it was done in a good, workmanlike and substantial manner. 5 L. R. A. 554; 63 N. Y.; 102 N. Y. 87; 88 N. Y. 648; 80 N. Y. 312; 62 N. Y. 226. And if the contract has been substantially complied with, the refusal of Allen to give his certificate could not defeat the action, because such refusal would be unreasonable. 17 N. Y. 176; 26 N. Y. 26; 44 N. Y. 145; 88 N. Y. 648; 34 U. S. (9 Pet.), 328; 4 Hun, 652; 21 Hun, 121; Beach, Mod. Law Cont. § 100.

2. In building contracts, substantial performance is all that is required. 80 N. Y. 317, and cases cited; 62 N. Y. 256; 81 N. Y. 211; 50 N. Y. 145; 88 N. Y. 648; 28 N. Y. Supp. 160; 6 Cyc. 57, and citations; 5 Lawson, Rights, Rem. and Pr. § 2487; 1 Beach, Mod. Law Cont. 140. Whether there has been a substantial performance is a question of fact. 6 Cyc. 58. And the chancellor's finding will not be disturbed unless it is against the preponderance of the evidence. 41 Ark. 294; 50 Ark. 185; 49 Ark. 465; 24 Ark. 431; 44 Ark. 216; 55 Ark. 112; 68 Ark. 134; *Ib.* 314; 68 Ark. 287; 71 Ark. 105; 73 Ark. 479.

3. The burden of proving the cost of remedying unsubstantial defects was on appellant. 32 S. W. 571, 573; 81 N. Y. 211; 50 N. Y. 666; *Ib.* 145; 123 N. Y. 385; 25 N. E. 418; 79 Ia. 40; 80 N. Y. 312; 62 N. Y. 264.

4. A certificate from Allen was not necessary to entitle appellee to recover. Authorities *supra.*

5. The contract provides for only one jig, specifying its dimensions, and the chancellor properly held that appellant was entitled to only such capacity as one jig, properly constructed, would handle with sufficient water supply. 52 N. Y. Supp. 747; 54 N. E. 661; 160 N. Y. 72. A contract to furnish a plant does not include water. Black, Law Dict. "Plant."

6. If there was a substantial performance, appellant's remedy was by plea in recoupment, and not in rescission of the contract. 32 S. W. 571; *Ib.* 24; 64 Ark. 34; 88 N. Y. 648; Floyd's Law of Building, § 29.

McCULLOCH, J., (after stating the facts.)   The chancellor found from the evidence certain defects in the constructed plant, but declared that there had been, on the part of the contractor, who seeks to recover the balance of the contract price, a substantial performance of the contract.   He declared the law applicable to the facts found to exist, as follows:

"The owner has no right to rescind a contract for the construction of a concentrating plant where the contract provides for partial payments as the work progresses, and large payments are made when the owner has provided for and actually placed a director on the ground to supervise the work.   In such case the owner is estopped from pleading a rescission of the contract, but must stand on the contract, and be satisfied with damages for failure to do the work in a skillful and workmanlike manner; and especially is this the law when said owner pays sub-contractors for material used in the construction of the plant after the plant has been completed, as it has done in this case."

We are unable to agree with him either as to findings of facts or as to the declarations of law.   It is undoubtedly the law that, in the absence of an agreement to the contrary, a substantial performance is all that is required to authorize a recovery of the contract price, less the additional cost of a literal compliance with the contract.   But it has been held by this court that (quoting the syllabus of *Hot Springs Ry. Co.* v. *Maher,* 48 Ark. 522) "where parties agree that all questions relating to quality, quantity, or manner of construction of work to be done shall be decided by an engineer in charge of the work, and that his decision shall be final and conclusive, his decision can not be questioned by either party except for fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment."   This decision is followed in the later case of *Ozan Lumber Company* v. *Haynes,* 68 Ark. 185, and is in line with the authorities generally.   30 Am. & Eng. Enc. Law, p. 1237; *Kihlberg* v. *U. S.,* 97 U. S. 398; *Martinsburg & Potomac Ry. Co.* v. *March,* 114 U. S. 549; *Chicago, S. F. & C. R. Co.* v. *Price,* 138 U. S. 185; *Sweeney* v. *U. S.* 109 U. S. 618; *National Contracting Co.* v. *Commonwealth,* 183 Mass. 89; *Bentley* v. *Davidson,* 74 Wis. 420.

The contract in this case provides that, upon completion of

79—33

the work, "the test must show to the satisfaction of the said W. N. Allen, or such other person appointed by first party, that the plant as a whole has been built in conformity to this agreement, and that it will crush and properly clean in ten hours or less at least fifty tons of ore from the said mine, or ore of a similar character to that of said mine." This is a valid feature of the contract, and is binding upon the parties; but an arbitrary and capricious expression of dissatisfaction will not prevent recovery, and by some courts it is held that such stipulations require only the performance of the work by the contractor in such a manner as ought to satisfy the owner. 30 Am. & Eng. Enc. Law, p. 1236; *Williams Co.* v. *Standard Brass Co.,* 173 Mass. 356; *Electric Lighting Co.* v. *Elder,* 115 Ala. 138; *Singerly* v. *Thayer,* 108 Pa. St. 291; *Howard* v. *Smedly,* 140 Pa. St. 81; *Exhaust Ventilator Co.* v. *C., M. & C. P. R. Co.,* 66 Wis. 218; *Duplex Boiler Co.* v. *Garden,* 101 N. Y. 387; Lloyd on Buildings, § 22.

The law upon the question is, we think, correctly stated by Chief Justice Brickell, speaking for the Supreme Court of Alabama, in *Electric Lighting Co.* v. *Elder,* 115 Ala. 138, as follows:

"There is no reason of public policy which prevents parties to a contract for the performance of work from agreeing that the decision of one or the other, or a third person, as to the sufficiency of the performance shall be conclusive. Having voluntarily assumed the obligations and risks of a contract, these legal rights and liabilities are to be determined solely according to its provisions. Where the decision is left to a third person, the authorities almost universally hold that his action, in the absence of fraud, or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment, is conclusive upon the parties. So, where, by the terms of a contract to do a piece of work or perform services, the excellence of which is not a mere matter of taste or fancy, or to furnish a piece of machinery or other article, the suitableness of which involves a question of mechanical fitness to do certain work or accomplish a certain purpose, the one party warrants the work or article to be satisfactory to the other, the weight of authority is, though the cases are not entirely harmonious, that there can be no recovery when the employer or purchaser is in good faith dissatisfied. And

this is true where there is no express warranty that the work or article shall be satisfactory, but a provision making the payment contingent upon its being satisfactory."

W. N. Allen, the person who, under the terms of the contract, was selected to give direction to the work and to whose satisfaction the plant should be constructed, was a stockholder in appellant corporation and manager of the Climax mine where the plant was to be operated; and, under the view which we take of the evidence, it is unnecessary to decide whether he should be treated as a disinterested referee or as a party to the contract, or to decide which of the rules of law hereinbefore announced should be applied to his refusal to accept the plant. Upon a careful consideration of the evidence, we are forced to the conclusion that it does not establish a substantial performance of the contract on the part of the contractor, or that the completed plant met the requirements of the test stipulated in the contract. Nor do we think that the chancellor's special finding of facts as to defects in the plant justify his general conclusion that there was a substantial compliance. He found that "the defects consisted in the floor lacking sufficient bracing, thickness of floor and failure to bat the hoister house; failure to put a mudsill lengthwise under the support to the ore-room; failure to line the mouth of the elevator and three pipes with iron; the failure to place a fourth girder, box and fixtures in the thirteen-foot space to support the main shaft; the failure to exactly plumb the piles in the foundation under the jig room; the failure to place sufficient piling under the west wall of the boiler and engine room, and to set the crusher on a solid foundation, and to sufficiently line the fire box under the boiler." A large number of witnesses introduced by appellant testified that these defects and numerous others, particularly in the foundation of each of the several buildings, rendered the whole plant insecure and worthless. These witnesses, who appear to be men of intelligence and with more or less experience on the subject, testified in detail concerning the defects in the plant, and that it wholly failed, on the final test, to perform the desired work. The effects of these defects in the plant are summarized in the following language of one of the witnesses, and is supported by the testimony of all the numerous witnesses introduced by appellant: "It was impossible to operate the mill con-

tinually on account of the choking of the spouts leading from the first roll to the elevator, and on account of the crusher being set so insecurely that the vibrations caused the taps holding the boxes on the crusher to become loose, and the jig was utterly unable to separate the sand from the ore, the ore now in the jack bin having a large per cent. of sand in it. The elevator showed a constant waste of fine ore, due to imperfect construction."

Appellee Patterson and a number of witnesses introduced by. him testified that the plant was constructed substantially according to contract, but that the final test failed solely because of an insufficient supply of water. While there is a sharp conflict in the evidence, we are of the opinion that the contention of appellant is supported by a decided preponderance.

The chancellor found that the plant was never accepted by appellant, and was not approved by Allen upon the final test. His finding on this point is sustained by the evidence.

It is contended, however, on behalf of appellee, that Allen was present during the progress of the work, that by his failure to exercise his right of disapproval while the work progressed he is deemed to have approved it, and that appellant is thereby estopped from rejecting the completed plant. This may be a correct statement of the law applicable to some building contracts, but can not be applied in this case where the contract stipulates for the right of acceptance or rejection on final test after completion of the plant, which is expressly warranted to perform certain work. *Brownell Imp. Co.* v. *Critchfield,* 197 Ill. 61; *Cornish-Curtis-Green Co.* v. *Dairy Association,* 82 Minn. 215; *Beharrell* v. *Quimby,* 162 Mass. 571. The contract in this case did not call for an approval or rejection by Allen until the final test should be made, and appellant was not estopped by his failure to disapprove before completion of the plant. Nor did the payment by appellant of bills for material used in construction of the plant operate as a waiver of the right to reject the whole plant. It follows from what we have said that appellee is not entitled to recover anything, and the decree in his favor was erroneous.

Appellant is entitled to recover the amounts advanced and paid to appellee on the contract price with interest from dates of payment, but we find no satisfactory evidence to justify an as-

sessment of damages for the failure of appellee to construct the plant.

The decree is reversed, and the cause remanded with directions to enter a decree dismissing the plaintiff's complaint for want of equity and in favor of the defendant for recovery of the amounts paid to appellee with interest from the respective dates of payment.