WHITENER-LONDON REALTY COMPANY *v.* RITTER.

Opinion delivered March 21, 1910.

1.  TIMBER—FAILURE TO CONSUMMATE SALE—REFUNDING PURCHASE MONEY.
    —Under a contract for the sale of timber which stipulated that the
    vendor should furnish a conveyance and abstract of title to be ap-
    proved by the vendee's attorney, the vendee is entitled to a return
    of the purchase money paid by him where the abstract of title tendered
    by the vendor was submitted to the vendee's attorney and rejected
    by him in good faith. (Page 267.)

2.  SAME—EXTENSION OF CONTRACT OF SALE—EFFECT.—The fact that a
    vendor of timber extended the time for cutting same without any
    consideration will not entitle the vendor to claim that the vendee
    had forfeited so much of the purchase money as had been already paid.
    (Page 268.)

Appeal from Craighead Circuit Court; *Frank Smith,* Judge;
affirmed.

*Charles D. Frierson,* for appellant.

1.  Where the court's findings are not supported by evi-
dence, this court will reverse, notwithstanding the general rule
that the findings of a court sitting as a jury are as conclusive
as the verdict of a jury. 65 Ark. 278.

2.  The court should have declared the law to be that the
money paid by appellee was for the option or purchase privilege,
and for the time given in the option contract, and the failure of
the attorney selected by appellee to approve the abstract does not
entitle appellee to recover the money paid.

3.  If appellee's attorney was made the depositary for both
parties, and the papers were deposited with him in escrow to
be delivered in case the Harrell deed was found of record, and
that deed was in fact found to be recorded, then appellee is not
entitled to recover. It was appellee's duty to examine the ab-
stract within the contract time. 1 Enc. L. & P. 203; 16 Cyc.
576; 5 Wall. 479, 18 L. Ed. 520.

4.  An extension of an option without additional considera-
tion is voidable. 1 Am. Cas. (Va.) 986; 24 Pac. 695; 2 Am.
Cas. (W. Va.) 421; 68 Md. 21; 11 Atl. 284; note to 21 L. R. A.
128; 21 Am. & Eng. Enc. of L. (2 ed.) 929. Passing on the
title by appellee's attorney was a duty, under the terms of the
contract, and would therefore be no sufficient consideration for
the extension. 5 Wall. 497, 18 L. Ed. 520; 9 Cyc. 347; 30
Ark. 50.

5. Relying on defects in the title, appellee must establish the same by competent proof, and such defects must be of a substantial nature. 20 Am. & Eng. Enc. of L. (2 ed.) 620, 621; 12 Cur. Law, 2220, and·cases cited.

*Lamb & Caraway,* for appellee.

1. A purchaser is not obliged to accept a defective title, even though the vendor offers to indemnify the purchaser against outside claims. 29 Am. & Eng. Enc. of L. (2 ed.) 618; 36 S. W. 1080; 17 B. Mon. (56 Ky.) 518.

2. If a contract for an option based upon sufficient consideration is extended after the time limited without any consideration, such extension is not an option, but a continuing offer, and may be withdrawn at any time before acceptance. 21 Am. & Eng. Enc. of L. 929.

McCULLOCH, C. J. Appellant, a Missouri corporation, owned, or claimed to own, tracts of timber land in Mississippi County, Arkansas, aggregating about 8,000 acres, and on April 10, 1906, entered into a written contract with appellee for the sale of the timber thereon. Portions of the contract material to the present controversy read as follows:

"That, for and in consideration of the sum of five hundred ($500) dollars in cash to the party of the first part in hand paid by the party of the second part, the receipt of which is hereby acknowledged, the party of the first part hereby contracts and agrees to sell and convey at the time hereinafter specified by a good and sufficient warranty deed all the cut down timber and timber standing, growing and upon the following described real estate situated in Mississippi County, Arkansas, viz: [Here follows description of tracts of land], containing 8,037.21 acres, being the same land conveyed by J. E. Franklin and W. E. Talley to H. S. Whitener, upon the following conditions:

"First. That the said party of the second part shall on or before the 16th of August, September or October, 1906, as hereinafter provided, notify in writing the party of the first part by registered letter addressed to it at its office in St. Louis, Missouri, that he intends to and will consummate the purchase of said timber, and will pay for it the sum of thirty thousand dollars in cash, and execute to it two promissory notes, each for the sum of fifteen thousand ($15,000) dollars, due in one and

two years after date, respectively, with interest at the rate of six per cent. per annum from date. Said notes to be secured by an instrument in the nature of a trust deed upon all of said timber which shall permit him to cut timber on all said lands before the maturity of the notes.

"It is further agreed that, if the said Ernest Ritter shall not on or before the 15th day of August, 1906, be ready to consummate the purchase of said timber and pay the amount of money and execute the notes as above specified, he shall have the right to abandon said premises by forfeiting the $500 above mentioned, and will do so unless he shall notify in writing the party of the first part by registered letter addressed to it at its office in St. Louis, Mo., of his intentions to consummate the purchase or shall notify the party of the first part of his desire to have this agreement extended to the 15th day of September, 1906, accompanying his notice with three hundred ($300) dollars in cash; and at the expiration of the last date he shall notify the party of the first part of his intentions to consummate the purchase of said timber or of his desire for a further extension of this agreement to the 15th day of October, 1906, again accompanying said notice with a tender of three hundred ($300) dollars in cash.

"It is further agreed that, in the event the party of the second part shall not notify in writing the party of the first part of his intentions to consummate the purchase as hereinbefore provided at the times herein specified, then the said party of the second part shall forfeit to the party of the first part all the sums of money that he may have heretofore paid to it, and shall have no recourse on it or its successors or assigns for any of said sums of money or any part thereof.

"It is further agreed that, in the event the party of the second part shall pay to the party of the first part the sum of thirty thousand ($30,000) dollars and execute and deliver to it two promissory notes each for the sum of fifteen thousand ($15,000) dollars, due and payable in one and two years after date respectively as hereinbefore provided, or offer to do so on or before the 15th day of August, September or October as hereinbefore provided, neither the party of the first part nor its successors or assigns shall have any cause of action against the

party of the second part on account of his abandonment of this contract, other than the forfeiture of the sums of money herein mentioned, provided, however, that the party of the second part shall cut no timber from the above described premises until he shall have elected to and shall have consummated the purchase of the timber as herein provided.

"It is further agreed that, in case of failure of the party of the second part to consummate the purchase of said timber at the times hereinafter specified, the party of the second part shall have no cause of action against the party of the first part for entering upon and taking possession of said timber or the money advanced for this option.   *   *   *

"It is further agreed that the conveyance of said timber and the abstract of title to the land upon which it stands is to be approved by some attorney selected by the party of the second part on or before the payment of the money and the execution of the notes herein provided for.   *   *   *

"It is further agreed that the amounts of money paid for this option on the consummation of the purchase herein provided shall be treated as a part payment of the thirty thousand ($30,-000) dollars cash herein provided for and deducted therefrom.   *   *   *

"It is further agreed that the deed hereto attached marked 'Exhibit A' and made a part hereof is a deed of conveyance which the party of the first part will execute and deliver to the party of the second part on his notifying the party of the first part of his readiness to consummate the purchase herein provided for."

At the end of the last period mentioned in the contract, towit, October 15, 1906, the sale not having then been consummated, the period was by further agreement extended to November 1, 1906, on the payment by appellee of the additional sum of $150, which made the total sum of $1,250 which he paid. On the last named date, the sale still not having been consummated, the parties met in St. Louis, and another short extension was agreed upon, nothing additional being paid for that extension. An abstract of title was by appellant furnished to appellee prior to November 1, 1906, and the same was submitted to the latter's attorney, who never approved it. The sale was never consummated, and appellee demanded a return of the

amount he had paid ($1,250), on the ground that the title was not such as would meet the approval of his attorney. Payment was refused, and this action at law was instituted by appellee to recover the amount. The case was tried before the circuit judge sitting as a jury, and the result was a verdict in appellee's favor for the full amount of his claim.

The first and principal question we are called on to decide is one of law in the construction of the contract—whether or not, according to its terms, appellee is entitled to a return of his money when he declined to take the property because the title was not such that it met the approval of his attorney. Of course, it must be conceded that, if appellee failed or refused to perform the contract according to its terms, he cannot demand a return of his money, for the contract expressly provided that if he failed to consummate the sale he should have no cause of action for the return of the money paid. Appellant insists on a construction of the contract which makes it a mere option to appellee for the purchase of the timber; that he paid his money merely for the option, and that, if he failed to consummate the sale on account of the title not proving satisfactory to his attorney, he cannot demand a return of the money paid. In other words, it is contended that appellee paid his money solely for an option to purchase the timber on specified terms; that he got what he paid for, and cannot demand a return of his money on the ground merely that the title was unsatisfactory to his attorney.

This contention entirely ignores an important clause of the contract, viz: that provision to the effect that appellant's deed of conveyance and an abstract of title should be approved by some attorney selected by appellee before the sale should be consummated. Now, the only fair and reasonable interpretation of this clause is that appellant undertook thereby, after being notified of appellee's election to consummate the sale, to furnish a conveyance and an abstract of title which would stand the inspection and approval of an attorney of appellee's selection, and, if appellant failed to do this, then it, and not appellee, was in the attitude of having failed to perform the contract. If appellant undertook in the contract, as we hold it did, to furnish a conveyance and an abstract of title which would pass the inspection of the attorney, then it was bound to perform that part

of the contract when appellee gave notice of his election to purchase the timber, otherwise it could not claim on appellee a forfeiture of the money paid. Of course, an arbitrary, fraudulent or collusive refusal of the attorney to approve the title would not have deprived appellant of the fruits of the contract (*Ark-Mo. Zinc Co.* v. *Patterson,* 79 Ark. 506, and cases cited), but nothing of that kind is claimed or shown in this case. It is our duty, in construing the contract, to give some effect to the above-named provision, and, unless we give it the meaning stated above, it amounts to nothing at all, for, in the absence of a stipulation in the contract, appellee would have had the right to submit the conveyance and abstract to any attorney he saw fit to select, either before or after the consummation of the sale.

The contract in question is more than a mere option—it is a contract whereby appellant undertook for a consideration to sell to appellee the timber on the land described, and, in the event that the latter elected to consummate the sale, to execute a conveyance and furnish an abstract of title which would stand the approval of an attorney. Appellee was not to have merely an option to purchase whatever title appellant had to convey, but he was to have a title which an attorney of his selection would approve; and if appellant failed to furnish that, it failed to comply with the contract. We conclude, therefore, that if appellee elected to consummate the sale, and so notified appellant within the specified time, and his attorney in good faith disapproved the title offered by appellant, then appellee is entitled to a return of the amount paid.

It is also insisted by appellant that the title was in fact good, and that it devolved on appellee to show that there was a substantial defect in the title. Such is not the effect of the contract, as we have already shown. Appellee was not bound to accept title over the disapproval of his attorney. The attorney could not arbitrarily or capriciously disapprove a title free from real or apparent defect, but there is testimony to the effect that the title as shown by the abstract was not perfect and apparently free from defect.

There is no merit in the further contention of the appellant to the effect that the short extension agreed upon November 1, 1906, was without consideration and therefore void, because appellee paid nothing additional for it. It was at least good until

revoked, as a continuing offer to sell, and appellant could not, because of want of consideration, take advantage of that to claim a forfeiture of the amount theretofore paid by appellee.

Finally, it is contended that the finding of the court is contrary to the undisputed testimony. Appellant insists that, according to the undisputed testimony, when appellee and his attorney were in St. Louis on November 1, 1906, it was agreed that the attorneys for both parties should join their efforts in a proceeding to confirm the title; that appellant would enter into a bond with appellee to indemnify appellee against any defect in the title; that the attorney for appellee and the president of appellant corporation should go to Osceola, Arkansas, to ascertain whether or not a certain deed from one Horrel was on record, and that, if it was found to be on record, then the sale should be consummated, and appellee should accept the bond; that the bond was duly executed, with sureties, and delivered to appellee's attorney, and that the Horrel deed was found to be on record at Osceola. We do not regard the testimony as undisputed on all these points. It is true the bond of indemnity was executed by appellant and delivered to appellee's attorney; but there is a conflict in the testimony as to the purpose of the trip to Osceola being solely to ascertain whether or not the Horrel deed was on record. There is also a conflict as to whether or not appellee agreed to accept the bond in lieu of his attorney's approval of the abstract. The trial court was justified by the testimony in finding that, though the bond of indemnity was executed and delivered to appellee's attorney, there was no agreement that the title should be treated as approved, or that the bond should be accepted in lieu of the attorney's approval of the title and the sale consummated without such approval. The evidence justified the finding that the bond was delivered to the attorney merely to keep and have in readiness when the sale should be consummated.

It is unnecessary to discuss the various declarations of the law requested by appellant. We conclude that the finding of the court is sustained by sufficient evidence, and that the decision is not contrary to law.

Judgment affirmed.