### ADAMSON et al. v. ALEXANDER MILBURN CO.

(Circuit Court of Appeals, Second Circuit. July 8, 1921.)

No. 128.

1. **Contracts ☞143—As made by parties cannot be altered by court.**
   The court must interpret a contract as made by the parties, and cannot change the contract so made by construction, and read into it words which the parties did not themselves put there.

2. **Contracts ☞147(2)—Construed according to intention of parties, to be deduced from language used.**
   In the construction of contracts, the court must, if possible, ascertain and give effect to the mutual intention of the parties, to be deduced from the language the parties have employed.

3. **Patents ☞183, 196—Offer and acceptance held to create a binding contract of sale of patent rights, and not merely an option.**
   An offer to assign patent rights and rights under pending application and future improvements conceived by inventor for a cash consideration, to be payable on agreement by assignee's attorneys as to the breadth and

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

patentability of the claims, accepted by the assignee on condition that its attorneys, who were to pass on the breadth and patentability of the claims, could await the first report of the Patent Office on the claims before committing the assignee to the cash payment, *held* to create a binding contract of sale, and not merely an option to purchase the patent rights.

**4. Patents ⊂⇒183, 203—Whether there was a failure in performance of contract of sale held for jury.**

In an action for breach of contract to pay a cash consideration for patent rights and rights under pending application and future improvements conceived by inventor, on agreement of defendant's attorneys as to the breadth and patentability of the claims, the question of whether there was such a failure in the breadth and patentability of the claims as would not protect the purchaser of the patent in the manufacture, sale, and use of it, and so justify the defendant's instruction to his attorneys to drop the matter prior to an adverse report from such attorneys, *held* for the jury.

**5. Patents ⊂⇒183, 203—Whether attorneys had sufficient time for agreement as to breadth and patentability of claims sold held for the jury.**

In an action for breach of contract to pay plaintiffs a cash consideration for patent rights and rights under pending application and future improvements conceived by inventor, on agreement by defendant's attorneys as to the breadth and patentability of the claims, the question of whether a sufficient time had elapsed for the attorneys to make the necessary investigations and agree as to the breadth and patentability of the claims *held* for the jury.

**6. Patents ⊂⇒183, 203—Whether attorneys had agreed as to the breadth and patentability of claims of patents assigned held for the jury.**

In an action for breach of contract to pay plaintiffs a cash consideration for patent rights and rights under pending application and future improvements conceived by inventor, on agreement by defendant's attorneys as to the breadth and patentability of the claims, the question whether the attorneys had in fact agreed as to the breadth and patentability of the claims *held* for the jury.

**7. Patents ⊂⇒183, 203—Failure of purchaser's attorneys to reach agreement as to breadth and patentability of claims made condition precedent to payment of consideration held no defense in action for consideration.**

Where payment of cash consideration for patent rights and rights under pending application and future improvements conceived by inventor was made conditional on agreement by purchaser's attorneys as to the breadth and patentability of the claims, the failure of the attorneys to reach such agreement was no defense in seller's action for such consideration, where the purchaser's acts of intervention had prevented them from reaching such an agreement.

**8. Contracts ⊂⇒221(3)—Money payable notwithstanding failure of contingency due to defendant.**

If the payment of money is contingent upon the happening of a particular event, and that event does not take place because the defendant prevents it, the money is payable nevertheless.

**9. Contracts ⊂⇒282—Rejection of work required to have been done to satisfaction of particular person cannot be arbitrary.**

Where something is to be done to the satisfaction of a particular person, and it is not simply a matter of personal taste, fancy, or caprice, to justify a rejection of the work and refusal to pay the rejection cannot be arbitrary or unreasonable.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. Patents ☞183, 203—Purchaser could not refuse to pay consideration on attorneys' refusal to examine into merits or withholding of consent on unreasonable grounds.**

    Purchaser who had agreed to pay cash consideration for patent rights and rights under pending application and future improvements conceived by inventor, on the agreement of his attorneys as to the breadth and patentability of the claims, could not withhold payment on the plea that the condition precedent had not been complied with, if the attorneys had without reason refused to examine into the merits or had withheld their assent on fictitious or unreasonable grounds.

    In Error to the District Court of the United States for the Southern District of New York.

    Action by Ernie Adamson and others against the Alexander Milburn Company. Judgment of dismissal, and plaintiffs bring error. Reversed, complaint reinstated, and new trial granted.

    The action was commenced in the state court, and was removed into the United States District Court on defendant's petition, the controversy being between citizens of different states. The plaintiffs Adamson and Van Pelt are citizens and residents of the state of New York, and Swiggert and Levinson are citizens and residents of the District of Columbia. The defendant is a corporation, and is a citizen and resident of the state of Maryland.

    Ernie Adamson is the inventor of an acetylene gas generator, for which patent No. 1,079,823 was issued to him by the United States Patent Office on November 25, 1913. The other plaintiffs acquired an interest in the patent from the inventor, so that all of the plaintiffs were owners of various interests in the patent and the improvements thereon afterwards conceived by the inventor.

    At the time the writing sued upon was signed Adamson had also applied for another patent for an improved acetylene gas generator, which patent was subsequently issued to him on September 2, 1919, as patent No. 1,314,780. The offer which resulted in the contract sued upon was to assign to the defendant the patent issued in 1913 and the rights under the application then pending for a patent for the improved generator and all designs and improvements on generators conceived by Adamson prior or subsequent to the date of the offer.

    The action is at common law for a breach of a written contract.

    The complaint alleged that on August 15, 1918, the plaintiffs entered into a written agreement wherein the plaintiffs sold to the defendant certain patent rights in the Adamson Acetylene Generator, with the right to manufacture and vend the same for three years, for a consideration of $5,000 and a royalty of $1 for each generator manufactured. It is alleged that by the terms of the agreement the defendant promised to pay to plaintiffs the sum of $5,000 within a reasonable time from the date of the contract, together with the royalty for each generator manufactured, and that defendant also promised to proceed with the manufacture and sale of the generators within a reasonable time. Then it is alleged that a reasonable time has long elapsed, but that defendant has failed to pay to the plaintiffs the said sum of $5,000, and has

failed to commence the manufacture and sale of the said gas generators; that if the defendants had proceeded within a reasonable time to carry out the terms of the contract it could have manufactured and sold 5,000 gas generators, and by reason of its failure to do so the plaintiffs were damaged in the sum of $5,000; and plaintiffs asked judgment in the sum of $10,000.

The plaintiffs alleged that they had duly performed their part of the contract, except that they had not delivered or tendered the documents necessary to transfer title to the patents, the reason for their not doing so being that defendant, prior to the time when the title was to be transferred, had notified the plaintiffs that it would fail to carry out the agreement upon its part, and that it would not accept any tender or delivery of the documents necessary to pass the title.

The defendant in its answer, among other things, alleged:

"That under and pursuant to the terms and conditions of the understanding between the parties, this defendant merely acquired an option or right to purchase the patents, inventions, and devices of the plaintiffs in the event that the defendant and its patent attorney or attorneys approved the claims and representations of the said plaintiffs with respect to said generator, and that unless and until the said claims were so approved this defendant should not be liable to the plaintiffs; that the said claims and representations of the said plaintiffs were never approved by the said defendant or by its patent attorney or attorneys, and that the said agreements never became operative nor of any binding force or effect other than as an option of which the defendant did not avail itself. Wherefore defendant demands judgment that the complaint be dismissed, with costs."

The case was tried before the court and a jury. At the close of the plaintiffs' case the defendant moved to dismiss the complaint on the ground that the plaintiffs had failed to make out a cause of action. Before this motion was disposed of counsel for the plaintiffs stated that he did not think that the plaintiffs had shown that defendant was obliged to manufacture generators, and the claim for royalties was therefore abandoned. The court granted the motion and dismissed the complaint.

Almy, Van Gorden & Evans, of New York City (William S. Evans, of New York City, of counsel), for plaintiffs in error.

A. Parker-Smith, of New York City (Robt. B. Honeyman, of New York City, of counsel), for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). It appears that the plaintiffs submitted to the defendant an offer in writing dated August 15, 1918. That writing contained a detailed description of the claim and advantages of the acetylene generator patent which Adamson had applied for on August 14, 1918, and was offering to assign to defendant. It also included an offer to assign to defendant the patent issued to Adamson on November 25, 1913, being patent No. 1,079,823, and all designs and improvements on generators conceived by Adamson prior or subsequent to the date of the writing, on the

conditions named in the offer. This writing was signed by the plain-
tiffs. There then was appended to it the following:

"The above and foregoing offer this 15th day of August, 1918, is hereby ac-
cepted, subject to our letter dated August 15, 1918.

"The Alexander Milburn Co.,
"A. F. Jenkins, President."

The above document we shall call the plaintiffs' letter. It contained'
the following important provision, which later it will be necessary care-
fully to consider in order that we may ascertain what kind of an agree-
ment it was that the parties made:

"The payment of the above-named cash considerations of $5,000 shall not
be demanded or payable until a sufficient time shall have elapsed for the re-
spective attorneys representing the parties to have been able to make the
necessary investigations and agree upon the breadth and patentability of the
claims, which it is understood will be of such a nature as to substantially
protect the purchaser of the patent rights in the manufacture, sale, and use, a
model of which said device has this day been left at the office of the Alexander
Milburn Company. Provided that the attorneys may agree, if they see proper,
to await the first report of the Patent Office upon the claims."

The defendant in its acceptance of the plaintiffs' offer, as above ap-
pears, made its acceptance "subject to our letter dated August 15,
1918." That letter we shall call the defendant's letter. In this letter
defendant stated that it accepted the offer contained in plaintiffs'
letter "substantially as set forth, subject, however, to" two conditions.
The first of these need not be considered. The second was as follows:

"It is understood and agreed by this company, Mr. Ernie Adamson and his
partners, that the clause, 'provided that the attorneys may agree if they see
proper to await the first report of the Patent Office on the claims,' is intended
and shall mean that the patent attorneys of this company, Messrs. Foster,
Freeman, Watson & Coit, through the person of Mr. J. A. Watson, or his
successor, is privileged to determine to await the first report on the Patent
Office under the claims before committing this company to the cash payment
of $5,000."

The defendant's letter was signed by its president. Then followed:

"Approved on behalf of Messrs. Adamson & Company.

"Ernie Adamson.

"August 15, 1918."

The court below in dismissing the complaint held that the writings
which these parties signed did not create a contract, and that there was
nothing more than an offer on the plaintiff's part to sell, which offer
the defendant was at liberty to accept or not at any time in the future
as it saw fit.

There is no question but that the plaintiffs' letter contained an offer
to sell. The consideration was to be $5,000, together with a royalty
for a term of 3 years, of $1 per generator manufactured. The consid-
eration was not to be payable, however, until a sufficient time had elaps-
ed for the respective attorneys representing the parties on both sides
to be able "to make the necessary investigations and agree upon the
breadth and patentability of the claims, which it is understood will be
of such a nature as to substantially protect the purchaser of the patent
rights in the manufacture, sale, and use." And then it was added

"that the attorneys may agree, if they see proper, to await the first report of the Patent Office upon the claims."

The letter of defendant accepting the plaintiffs' proposal simply modified the prior provision that payment need not be made until the respective attorneys representing the parties had been able to do certain things, and made it more specific. It stated that the clause providing "that the attorneys may agree, if they see proper," etc., "is intended and shall mean that the patent attorneys of this company, Messrs. Foster, Freeman, Watson & Coit, through the person of Mr. A. J. Watson, or his successor, is privileged to determine to await the first report on the Patent Office under the claims before committing this company to the cash payment of $5,000."

The real question is as to the effect of the defendant's letter of acceptance. Did that letter constitute a conditional acceptance of an offer to sell, the condition being that the respective attorneys after the necessary investigations, and if defendant's attorneys so desired after the first report of the patent on the claims, should be able to "agree upon the breadth and patentability of the claims," which it was understood would be of such a nature as substantially to protect the purchaser?

[1, 2] It is not the province of courts to make new contracts for parties. They have no right to alter a contract by construction. Their duty is restricted to the interpretation of the contract as the parties made it for themselves. They have no right to sustain or reject a contract according to its wisdom or its folly. They must, if possible, ascertain and give effect to the mutual intention of the parties. And that intention is to be deduced from the language the parties have employed. The courts cannot read into contracts words which the parties did not put there.

The District Judge in construing the writings said:

"Therefore this clause, speaking of Mr. Adamson for the moment as a layman, and Mr. Jenkins appearing to be a layman, as drawn by these laymen in a very comprehensive manner. It might perhaps have been better expressed, but it contains, in my judgment, the clear intent that this was in effect nothing more nor less than an option until and unless the attorneys for the respective parties were able to make the necessary investigations and agree upon the breadth and patentability of the claim. To give any other construction to this paper, then the words 'agree upon' are utterly useless and have no meaning. It seems to me that the theory of the contract was, to put the matter colloquially, 'I, Adamson, have a device which I am satisfied is patentable.' To that Jenkins answers, 'Very well. When your attorneys and mine can agree upon the breadth and patentability of the claim this offer of yours, which I am willing to undertake, will go into effect, and the $5,000 shall be paid.' Any other construction, in my judgment, is utterly inconsistent with the written paper."

[3] We are unable to concur in the construction which the District Judge has given to the writings. In arriving at the conclusion he reached he appears to have been influenced greatly by the thought that a man would not, to use his expression, "buy a pig in a poke." And thus he finds a "clear intent" that the agreement was nothing more nor less than an option. The language the parties used impresses us differently, and we do not feel warranted in holding that the de-

fendant acquired or was intended to acquire a mere option. The word "option" is not found in the writing, and there is not a word of testimony in the record showing that at any time during the negotiations any reference was ever made to an option, or that at any time afterwards, up to and including the final rejection by the defendant of the agreement, anything was said by either party as to the existence of an option. The language used is not the language employed to give an option. If an option was intended, the writings bound no one and the parties went to considerable trouble to no purpose. What happened was this: The plaintiffs made an offer in writing to assign absolutely to the defendant certain patent rights for a certain consideration, which was not payable until a specified event. The terms of the offer provided that "the acceptance of this offer shall be deemed complete when an indorsement is made across the face thereof by the proper administrative officer of the prospective purchaser named herein." That indorsement was made, but subject to a modification which the plaintiffs accepted, and which need not now be considered, as it did not change the nature of the transaction. It does not appear to us that the nature of the transaction is doubtful or in the least degree ambiguous. It was an offer to sell and an acceptance thereof. There is no consideration mentioned to support an option, and there was none in fact. Indeed, it seems on reflection quite incredible that one who thought he had at that particular and critical time a device which he regarded as of considerable value would give an option thereon for an indefinite time and without any consideration whatever and one which was, therefore, not binding. It is more credible to assume that the parties intended a binding contract of sale. The subject of the sale is specified, and the consideration and the time and manner of payment are set forth. We think the court was in error in holding that the writings gave the defendant a mere option.

After the writings had been signed it appears that the plaintiffs turned over to the defendant's attorney, Mr. Watson, a model of the device and the application for the patent, and asked his co-operation in getting the application in a form satisfactory to him. Mr. Watson investigated the matter and caused investigation of the state of the art to be made. He then informed the plaintiffs' attorney that so far as he could see the claims set forth in the application sufficiently covered the device as described and disclosed by the model, and the attorneys for the respective parties were in apparent agreement.

The following is an excerpt from the testimony of the plaintiff Adamson as to a conversation which took place between his attorney, Phillips, and defendant's attorney, Watson, in his (Adamson's) presence, in August, after the writings had been signed. His testimony was as follows:

"Mr. Phillips introduced me to a gentleman by the name of Mr. Watson, and Mr. Phillips told Mr. Watson that I was the inventor of certain improvements in acetylene gas generators which were involved in the contract about which he and Mr. Watson had had a previous conversation when I was not present; and Mr. Phillips then asked Mr. Watson if he had read or gone into the case, and what he thought about it, and what action was in his opinion

necessary. Mr. Watson said that he had read the papers, and that so far as he could see the specifications and claims covered the device."

Mr. Phillips testified to a later conversation he had with Mr. Watson in the Patent Office in Washington in August, after the writings were signed. His testimony was as follows:

"The substance of his conversation was that he had talked with the examiner in there, and that he had looked at the file, and that, as I remember, he said that he thought that the claims as prepared in my office covered the invention as disclosed in the application and by the drawings."

Mr. Phillips testified to a subsequent conversation he had with Mr. Watson (of course after the writings were signed), as follows:

"He [Watson] said that he would expedite the matter as quickly as possible; that he had read the specifications, claims, and that he felt that the claims probably covered the invention as disclosed in the specification and the drawings, but that he had turned the matter over to his expert, a Mr. Bryant, who would look into the art of record which he had in his office, he having himself probably taken out more patents on acetylene gas generators than all of the rest of the patent attorneys in the United States, and as soon as Mr. Bryant had completed his investigations he would, if necessary, broaden the scope of the claims, and add such additional claims as he might see fit so to add, and I was very glad indeed to have him tell me that."

The next development was that the defendant instructed its attorney that he was to do nothing further in the premises. At the same time the president of the defendant company sent to the plaintiff Adamson the following letter, dated October 8, 1918:

"The latest model of your generator, which was made up under your last instructions, was returned to us from the medical depot. We have, in consequence, for the first time been able to test same, and regret to advise you that the tests show that the generator is practically inoperative, and is not in a form which can be used. The generator is entirely contradictory of all of your claims, and from a practical standpoint is utterly worthless.

"Enclosed please find two charts and condensed reports of tests which speak for themselves.

"We have notified Mr. Watson to discontinue any further action in the matter. If you have a more perfect device to submit, we will be pleased to examine same."

Thereafter the defendant refused to pay the cash consideration specified in the writings and refused to manufacture the generators and pay the royalties. Its refusal was not on the ground that the device was not patentable and that a patent issued on the application would not contain claims so broad as to protect the purchaser in the manufacture and sale of the device, but upon the ground that it would not operate properly.

After the receipt of the letter of October 8, 1918, above referred to, the plaintiff Adamson continued to prosecute the application for the patent, and on September 2, 1919, the patent was issued, being patent No. 1,314,780.

No part of the consideration specified in the letter of August 15, 1918, has ever been paid, although payment was demanded. This action was commenced to recover it in the state court on April 20, 1919. The action was removed to the United States District Court, and defendant filed its answer on July 9, 1919. The trial of the cause was

not, however, commenced until May 5, 1920. At the trial the plaintiffs offered to show that the patent as granted protects the owner of the patent in the manufacture, sale, and use of the device. This the court declined to permit, on the ground that the contract to become effective required an agreement on the part of the attorneys for both sides, and that condition had not been fulfilled.

The ground, and the sole ground, which led the defendant to instruct its attorney to discontinue any further action in the matter, was that the device would not operate properly.

It appears that prior to the granting of the patent a small model of the device of the patent was submitted to the medical department of the government, which turned it over to the Bureau of Standards, which made a report that the device would not operate. There is some evidence in the record that there was an understanding between Adamson and the defendant's president, Jenkins, that the test was not to be made on the small model submitted; and the former, when he learned that the small model was used as a test, expressed much surprise to Jenkins that he had allowed the tests to be made on the small model, which he "knew would not operate properly." There was testimony, too, tending to show that the test was improperly made, the device having been overcharged, the carbide holder being "completely full of carbide," so as to leave no room for the necessary expansion. Adamson testified that he had operated the device both in small and in larger sizes. But it seems that defendant, without the advice of its own patent attorneys, and without any adverse report from them, although they had been designated by it as its representatives in the matter, assumed the responsibility of directing them to abstain from proceeding further because of the failure of the particular device to work which had been submitted to the medical department.

[4] It is not, of course, for this court to say whether there was such a failure "in the breadth and the patentability of the claims" as would not protect the purchaser of the patent in the manufacture, sale, and use of it, and so justify the defendant's instruction to his attorneys to drop the matter. That question would have been a proper one for the jury under appropriate instructions if the case had ever been permitted to get that far.

[5, 6] The plaintiffs had a right to go to the jury upon the question whether in the words of the contract a sufficient time had elapsed for the attorneys of the respective parties to make the necessary investigations and agree upon the breadth and patentability of the claims. There was some evidence from which it might be inferred that the attorneys were in fact in agreement as to the breadth and patentability of the claims. The plaintiffs, therefore, had a right to submit that question to the jury if they so desired.

The plaintiffs undertook to give to the defendant a specified device, with claims of such a nature as to protect the defendant in purchasing the patent rights. It was a question for the jury whether they had done so.

[7, 8] As this case must go back for a new trial, it may be proper for us to call attention to the fact as respects the understanding that

the purchase of the plaintiffs' rights in the device was made dependent upon the attorneys reaching an agreement as "to the breadth and patentability of the claims," that the defendant would not be entitled to object that such an agreement was not reached provided it was prevented by the defendant's own wrongful intervention. It is undoubtedly the law that if the payment of money is contingent upon the happening of a particular event, and that event does not take place because the defendant prevents it, the money is payable nevertheless. Mogulewsky v. Rohrig, 104 App. Div. 147, 148, 93 N. Y. Supp. 590.

[9, 10] We think it also not improper to point out that where something is to be done to the "satisfaction" of a particular person, and it is not simply a matter of personal taste, fancy, or caprice, to justify a rejection of the work and refusal to pay the rejection cannot be arbitrary or unreasonable. A simple allegation of dissatisfaction without a good reason is no defense. Parlin & Orendorff Co. v. City of Greenville, 127 Fed. 55, 60, 61 C. C. A. 591; Bowery v. National Bank, 63 N. Y. 336; Russell v. Allerton, 108 N. Y. 289, 15 N. E. 391; Duplex Boiler Co. v. Garden, 101 N. Y. 387, 4 N. E. 749, 54 Am. Rep. 709; Doll v. Nobel, 116 N. Y. 230, 22 N. E. 406, 5 L. R. A. 554, 15 Am. St. Rep. 398; Hawkins v. Graham, 149 Mass. 284, 21 N. E. 312, 14 Am. St. Rep. 422; Ark.-Mo. Zink Co. v. Patterson, 79 Ark. 506, 96 S. W. 170. And if in the instant case there had been no instruction given by the defendant to its attorneys to refuse to proceed further, and the attorneys had without reason simply refused to examine into the merits, or had withheld their assent on fictitious or unreasonable grounds, the defendant could not refuse to make the payment on the plea that the condition precedent had not been complied with. Williston on Contracts, vol. 1, 75, 76. In Thurman v. City of Omaha, 64 Neb. 490, 90 N. W. 253, the contract provided that it should be subject to the legal opinion of an attorney as to the legal status of the thing purchased. It was held that the action of the attorney had to be reasonable and well founded. In the case at bar the matter upon which the attorneys were to agree related to "the breadth and patentability of the claims." But when the plaintiffs asked to be permitted to introduce evidence to the effect that the patent as granted and as in evidence "will and does protect the owner of the patent in the manufacture, sale, and use of the device," the court refused to permit it to be shown stating that he did so because the contract to become effective required an agreement on the part of the attorneys for both sides.

The judgment is reversed, and the cause remanded, with directions to reinstate the complaint and grant a new trial.