JONES & CAREY V. GILCHRIST, RAMSEY & HENDERSON.

No. 248.

**Mason Work—Control by Engineer—Parol Contract—Specifications.**

Written contract for stone mason work called for "the best description of range rock work," the kind and quality of materials to be "subject to the inspection, test, and approval of the engineer." The range work called from twelve to thirty inches in thickness. The engineer condemned the stone from a quarry from which the stone could have been obtained at less cost than was expended upon the stone required by him. The engineer also required the stone furnished to be cut down to thirteen inches. Subcontractors who filled the contract claimed pay for the extra expense in getting the stone and in cutting it down as required by the engineer. The subcontractors offered proof of a parol agreement by the railway made before the written contract was executed, that the stone might be used from the condemned quarry. and also as to eighteen inches range. *Held*, that the written contract superseded the parol; that under the contract the engineer had the power to select the kind and quality of the stone to be used, and determine its thickness; and that the subcontractors were bound by the written contract, of which they were charged with notice ............ 93

ERROR to Court of Civil Appeals for Second District, in an appeal from Tarrant County.

The opinion contains a sufficient statement.

*Leake, Henry & Reeves* and *Stanley, Spoonts & Meek,* for plaintiffs in error.—The right of plaintiffs to recover was made to depend, by their pleadings and evidence and by the charge of the court. upon the proposition, that while plaintiffs and defendants were negotiating with regard to making the written contract, a parol agreement was made between them by which the character and size or thickness of the stone to be used by plaintiffs were specified, whereas the written agreement provided differently with regard to both.

In the District Court and in the Court of Civil Appeals the defendants contended that plaintiffs could not recover upon that issue, because a parol agreement, made pending negotiations resulting in a written contract, can not be permitted to control or affect such written contract.

In the same connection plaintiffs contended, that subsequent to the written contract the defendants made a parol agreement substantially to the same effect as the above stated preceding one, and this also seems to have been given effect to, notwithstanding the contention of the defendants that, if true, it was wanting in a consideration to support it. But we admit, if the court erred on either issue, the judgment should be reversed. The appellants contend, that nothing was left unprovided for by the written agreements when both are considered together, as was intended and understood by all of the parties.

None of them were in ignorance of the extreme importance of the construction of bridges safe for the lives of people, as well as the preservation of property.

It was both the right and the duty of the railroad company to direct and control at all times every detail connected with the materials used and the work of construction. It made a written contract, specifically providing that it should, through its engineers, direct and supervise and select and control both the material and the work, not in advance of the beginning of the work, but during its progress, when such control would be most effective.

But for the existence of the Jones contract with the railroad company, there would not have been any between Jones & Carey and the plaintiffs. The plaintiffs were not without knowledge that their work under their subcontract would necessarily have to be performed, day by day and stone by stone, under the watchful eye and absolute but intelligent direction of the railroad officers.

They do not deny that they entered into a written contract plainly having that meaning, and none other.

As plainly as language could be made to express, they so undertook when they in said written contract agreed that they would complete and finish the work contracted for, "according to the specifications of the Gulf, Colorado & Santa Fe Railroad, and to the satisfaction and acceptance of the chief engineer of said company." And by said written contract, it was only when the work of plaintiffs was "duly performed and completed, and accepted by said engineer," that the defendants promised to pay them anything, and then the promise was to pay only the "first contract price, less ten per cent."

But up to this time, it has been successfully contended by plaintiffs that they could entirely absolve themselves from the plainly expressed and important terms of said contract by proving a conversation that preceded it between one of themselves and Jones and some railroad engineer. In the Court of Civil Appeals the result was accomplished by "interpreting" the written agreement "in the light of the oral agreement."

We are totally unable to agree with the Court of Civil Appeals, that the only thing with regard to the thickness of the stone to be used that the written contract controlled, is found in the expression, "that the courses shall not be less than twelve nor more than thirty inches in thickness."

While neither the size nor the quality of the stone that could be used within these extreme limits was fixed in advance by inches or otherwise, they were still provided for in that part of the written agreement that stipulated that until used they were subject to the decision and control of the engineer.

It is useless for us to advert to the differences between the parol and the written agreements; they are striking and important.

Our contention is, that the law will not permit the deliberate written contract of the parties to be destroyed by proof of an antecedent parol agreement.

Upon the proposition that the agreement can not be varied by a contemporaneous or prior parol agreement, we cite the following authorities: Franklin v. Mooney, 2 Texas, 454; Stampers v. Johnson, 3 Texas, 3; Heatherly v. Record, 12 Texas, 50; Castro v. Illies, 13 Texas, 229; Reid v. Allen, 18 Texas, 248; Trammel v. Pilgrim, 20 Texas, 160; Hunt v. White, 24 Texas, 650; Hughes v. Sandal, 25 Texas, 162; Callison v. Gray, 25 Texas, 84; Bedwell v. Thompson, 25 Texas Supp., 246; Self v. King, 28 Texas, 554; Smith v. Garrett, 29 Texas, 53; Donley v. Bush, 44 Texas, 7; Boehl v. Wadgymar, 54 Texas, 592; Railway v. Pfeuffer, 56 Texas, 71; Chatham v. Jones, 69 Texas, 744; Dolson v. De Ganahl, 70 Texas, 622; Earle v. Marx, 80 Texas, 42; Dubois v. Rooney, 82 Texas, 176; Watson v. Miller, 82 Texas, 284; Abram v. Railway, 83 Texas, 65; Sanborn v. Murphy, 86 Texas, 441; Ins. Co. v. Lyman, 15 Wall., 664; Ins. Co. v. Mowry, 96 U. S., 544; 1 Greenl. on Ev., sec. 275; Bish. on Con., 169, 170; Whart. on Ev., sec. 1050; 30 Texas, 348.

*Ball & Ball*, for defendants in error.—1.   The court did not err in permitting plaintiffs to prove the enhanced value of the work in question, and the cost to plaintiffs of the extra work done under appellants' orders. Ricker, Lee & Co. v. M. D. Collins, 81 Texas, 663; Railway v. Snelling, 59 Texas, 116; Watchman v. Crook, 5 Gill & J. (Md.), 240; Andre v. Hardin, 32 Mich., 324; Bradbury v. Helms, 92 Ill., 35.

2.   Appellees' action is brought to recover for extra work done at the instance of defendants, and on their implied and express promises to pay therefor, and under no written contract.  Watchman v. Crook, 5 Gill & J. (Md.), 240; Andre v. Hardin, 32 Mich., 324; Bradbury v. Helms, 92 Ill., 35.

DENMAN, ASSOCIATE JUSTICE.—In October, 1886, the Gulf, Colorado & Santa Fe Railway Company and Jones & Carey entered into a written contract, whereby Jones & Carey agreed to build the road of the company, including clearing, grubbing, grading, masonry, timber work, and track laying, in the Indian Territory, from Red River to the Canadian River, the work to be done according to the specifications attached, and "in conformity to the plans and directions and to the satisfaction and acceptance of the chief engineer of the railroad company." The contract fixed the prices of the various kinds of work, and provided for its payment on the monthly estimates of the engineer; and also provided, that the decision of any dispute growing out of the contract should be referred to a board of arbitration, whose action therein should be final.

The specifications attached to said contract, and made part thereof, were prepared for an extension of a line of railroad through an undeveloped country, and provided, under separate *subdivisions*, for the various kinds of work necessary to be done in the construction of a railroad. The subdivision "masonry" embraced all the rock work, which was again subdivided into (1) first-class bridge masonry, (2) second-

class bridge masonry, (3) arch culvert masonry, (4) box culvert masonry, (5) paving, and (6) riprap, with separate provisions as to each.

In reference to the "first-class bridge masonry," the specifications provided, (1) that it "should be built of the best description of range rock work;" and (2) that "the courses should not be less than twelve nor more than thirty inches in thickness, decreasing from bottom to top of walls."

After each separate class of work had been provided for, the specifications stated certain "general conditions" applicable to all the classes, among which were (1) "the kind and quality of all materials to be used in the work shall be subject to the inspection, test, and approval of the engineer;" and (2) "any departure from or refusal to comply with the instructions given by the engineer shall be considered a violation of this contract, and the engineer shall have full power to remove or cause to be removed, at the contractors' expense, any work that may be performed in a manner contrary to the specifications or instructions given."

On June 4, 1887, Jones & Carey entered into a written contract with Gilchrist, Ramsey & Henderson, wherein the latter agreed with the former to do all said "first-class bridge masonry" at certain points on said road, "according to the specifications of the Gulf, Colorado & Santa Fe Railroad, and to the satisfaction and acceptance of the chief engineer of the said company." Said specifications became and were a part of each of said contracts.

Plaintiffs, Gilchrist, Ramsey & Henderson, introduced testimony tending to show, that before signing said contract of June 4, 1887, they had a verbal agreement with said engineer and Jones & Carey, that the rock necessary to construct the piers of the bridges agreed to be constructed by them under said contract could be taken from the "Red River quarry," and that after the contract was signed, said engineer refused to allow stone from that quarry to be used for the foundations of said piers, and required them to procure therefor a much harder stone, whereby they were compelled to expend large sums of money in *excess* of what it would have cost them to procure the stone so agreed upon; and for such excess they sought to recover against defendants, the contract price having been already paid to plaintiffs. Defendants, in their testimony, denied the existence of said oral agreement.

The court instructed the jury, that said contracts and specifications did not determine, nor authorize the engineer to determine, the kind and quality of stone that should be used, and that therefore the antecedent oral agreement, if made, was valid.

This construction of the written contracts, being approved by the Court of Civil Appeals, is here assigned as error.

This construction placed it in the power of Jones & Carey, or the railroad company, to practically annul the contract, by refusing to agree on the kind and quality of material for the work at the various points along the line of road covered by the contract, and therefore

should not obtain, unless it be the necessary effect of the language used.

This was a contract of great magnitude, contemplating work through an undeveloped country, and it was of the greatest importance to the railroad company that proper material be used, and to the contractors, Jones & Carey, that they be allowed to use such material if found in the vicinity of the particular work.

Thus it appears, that the circumstances surrounding the making of the contract point to the utility, if not the necessity, of vesting the power in some one of determining, while the contractors were in the prosecution of the work at different points under great expense, what material should be used in any particular work, in order to prevent the loss and vexation which would necessarily result if an oral agreement between the parties were necessary to determine the same.

We are of the opinion, that the two provisions above quoted from the "general conditions" in the specifications were intended to and did vest such power in the engineer, and that his decision was binding upon the parties, unless set aside by proper allegations and proof. Railway v. Henry & Dilley, 65 Texas, 685; Railway v. March, 114 U. S., 549.

Plaintiffs having entered into a written contract to do the work according to the specifications, and to the satisfaction and acceptance of the engineer, as above stated, the provisions of the specifications became as binding upon them as they were upon Jones & Carey and the railroad company. We are therefore of opinion that the court erred in giving said charge.

Plaintiffs also introduced testimony tending to show, that at the time of the verbal agreement above referred to and included therein, there was also an agreement that the rock work on said piers above the foundation should be made of stone from said Red River quarry, and that the courses should be eighteen inches in thickness, and that when the work began the engineer, contrary to said agreement, required said stone to be cut down to a thickness of thirteen inches, whereby plaintiffs were compelled to incur great expense in excess of what it would have cost them to build the piers of layers of eighteen inches in thickness, as agreed upon, for which excess they also sued defendants.

It appears from the testimony that the rock from said quarry was hard on one side and soft on the other, and that the trouble between the engineer and plaintiffs grew out of the fact that there was a difference of opinion between them as to how much of the soft side should be cut off in order to leave the rock hard enough to be suitable for use in the piers.

The variation in the thickness of the courses allowed by the specifications, from twelve to thirty inches, as above stated, was evidently for the purpose of allowing the engineer to permit the contractors to utilize rock of different thickness, and for that purpose he could direct

the thickness of the courses; but such direction would not deprive him of the power of determining the kind and quality of rock to be used, which included the power to direct the cutting down of any proffered stone, so as to remove from it all unfit material.

On this issue the court charged the jury, in effect, that plaintiffs might recover if they should find the existence of said antecedent oral agreement, and that plaintiffs had been compelled to incur expenses, in excess of what they would have incurred in performing the oral agreement, in consequence of the engineer's having required the stone to be dressed to a thickness below that so agreed upon.

Under our view of the law as above expressed, this charge is erroneous, in that it ignored the power of the engineer to determine the kind and quality of the stone.

The charges of the court above referred to are not subject to the criticism, that the court below tried the case upon the theory that plaintiffs' written contract could be varied by an antecedent oral agreement, for the court only submitted the evidence as to the oral contracts after it had construed the written instruments as having made no provision for the determination by the engineer of the kind and quality of the material.

As we construe the written contract entered into between plaintiffs and Jones & Carey, the antecedent oral agreements, if allowed, would clearly vary the same by substituting the oral agreement, to the effect that the stone from Red River quarry, cut to the thickness of eighteen inches, could be used in building the piers, including foundations, in lieu of the provisions in the written contract above referred to, as conferring upon the engineer the power of determining the kind and quality of stone and thickness of courses. We are of opinion, that the charge of the court in reference to the "coping" and the arbitration proceedings clearly and correctly presented the law applicable to such issues, and that the jury were correctly charged to render a verdict in favor of the defendant Gulf, Colorado & Santa Fe Railroad Company.

For the errors above indicated, the judgments of the Court of Civil Appeals and the District Court are reversed as between plaintiffs and defendants Jones & Carey, and remanded for a new trial, but are affirmed as to the defendant Gulf, Colorado & Santa Fe Railroad Company.

*Reversed and remanded.*

Delivered March 11, 1895.