CARLILE *v.* CORRIGAN.

Opinion delivered May 13, 1907.

1. CONTRACT—AGREEMENT TO ABIDE BY REFEREE'S DECISION.—An agreement between two parties to abide by the decision and final estimates of a third person is binding upon them and can not be questioned except by showing fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment. (Page 140.)

2. APPEAL—REOPENING CHANCERY CASE.—Where in a chancery case an amendment to a pleading which raised a new issue was filed after the depositions had been taken, and it does not appear that the testimony was fully developed upon such issue, the cause on a reversal will be remanded with directions to let in additional testimony. (Page 143.)

Appeal from Pulaski Chancery Court, *Jesse C. Hart,* Chancellor; reversed.

*John McClure,* for appellant.

1. The interveners were not bound by the decision and final estimate of the chief engineer, as per stipulation in the principal contract, if such agreement was made with the principal con-

tractors. No such verbal contract was proved or made. If such a contract was made, Corrigan & Company waived the provision that the measurements and classifications of the chief engineer were final. 19 Fed. Rep 244; 15 Gray, 231; 45 N. J. L. 215. But B. Corrigan, under his agreement with Dunne, at Chicago, in August, is bound by the findings, remeasurement and reclassification of the engineers selected by her.

2. Granite should be classified in a class of itself. It is not shale, slate, soapstone, gravel, loose rock, solid rock, nor earth—but as granite, at one dollar per yard. (See testimony of B. Corrigan, Slayton, Donnelly, and Reugh.) So, where a certain construction of a contract, would be unjust and produce results not contemplated by the parties, it will be construed, not by its literal terms, but by its spirit and intent. 57 Pa. St. 301; 14 Vt. 311.

3. Corrigan states in his deposition that he received the final estimate of the chief engineer July 22, 1902, after the classification and payment, and it follows that appellees are liable for the difference in the classification.

*C. H. Trimble,* of Memphis, for appellee.

The findings of the chief engineer were conclusive, and there is no allegation nor proof of fraud. Proof of erroneous judgment, or unjust judgment or opinion, is not sufficient. 114 U. S. 549; 62 Fed. 698, 704; 49 *Id.* 708; 107 Pa. St. 419; 33 Wis. 331, 342; 14 Gratt. 447, 467; 71 Ill. 133, 143. And the proof of fraud must be clear and convincing. 67 Fed. 638; 74 *Id.* 707; 133 U. S. 609, 619; 32 S. E. 203, etc. The fact that the court might differ with the chief engineer in conclusions will not warrant setting aside his findings. 60 Fed. 725; 67 *Id.* 633; 17 How. (U. S.) 344; 89 Fed. 185-8-9.

2. Everything due appellants had been paid, according to the final arbiter, before June 30. Mr. Corrigan simply made a mistake as to the date being June 22. The deposition was taken some years after the transaction was closed.

McCULLOCH, J. Bernard Corrigan & Co., a firm composed of Bernard Corrigan, Pat Dowling and George M. Garvey, in March, 1901, entered into a contract, with the Western Oklahoma Railroad Company, for the construction of one hundred and seventeen miles of railroad in the Indian Territory.

The contract stipulated that, in order to prevent disputes between the contracting parties concerning the provisions of the contract or the matter of performance thereof, "the chief engineer of the railroad company * * * shall be, and he is hereby, made, constituted and appointed the umpire to finally decide all such questions and matters; and he shall also determine and set forth in final estimates the quantity and classification and amount due the contractor for all work and material furnished by the contractor under this contract," and that his decision should in all things be final and conclusive upon the parties.

Bernard Corrigan & Company sublet the contract for clearing and grading sections sixty to sixty-seven, inclusive, to Carlile, Corrigan & Dunne, a firm composed of J. M. Carlile, Edward Corrigan and J. E. Dunne, at the following prices:

"Clearing and grubbing, twenty-five dollars per acre.

"Earth excavation, thirteen cents per cubic yard.

"Loose rock excavation, thirty cents per cubic yard.

"Solid rock excavation, sixty cents per cubic yard.

"Granite excavation, one dollar per cubic yard.

"Overhaul, one and one-half cents per cubic yard, over 5000 feet.

"Riprap, one dollar per cubic yard."

After the completion of the whole work, George M. Garvey commenced a suit in the chancery court of Pulaski County against his co-partners in the firm of Bernard Corrigan & Company to settle the affairs of the partnership and to enjoin the railroad company from paying over any money to Bernard Corrigan.

Carlile, Corrigan & Dunne (the last-named member of the firm having died in the meantime and the interest of his estate in the contract being represented by his executrix, Helen M. Dunne) intervened in the suit, claiming a balance of $6,513.66 to be due them by said principal contractors for work performed under the contract, and prayed that said amount due them should be decreed to them before the partnership fund under the contract of the court should be paid to Bernard Corrigan & Company, or any member thereof. The interveners alleged in their complaint that the contract between them and said principal contractors was verbal, that the work performed

thereunder by them at the prices agreed upon' amounted in the aggregate to $59,439.10, and that they had been paid the sum of $52,925.44, leaving due them the said amount claimed as above stated.

Bernard Corrigan & Company, the defendants to the intervention, filed their answer, setting forth the terms of their contract with the railroad company and alleging that the interveners, in their contract with the defendants, had agreed to perform all work undertaken by them under and subject to all the terms of said contract between defendants and the railroad company. They further alleged that the chief engineer of the railroad company made a final estimate of all the different kinds of work performed in said sections, that the railroad company had settled with them and paid them for the work in accordance with said final estimates, and that they, in turn, had settled with interveners and paid them in full for all work performed, in accordance with said final estimates of the chief engineer. They denied that they were indebted to the interveners in any sum.

The interveners subsequently filed an amendment setting forth that Bernard Corrigan, one of the partners, promised in August, 1902, in writing, that, if there was any mistake or error in the account of Carlile, Corrigan & Dunne, the error should be corrected; that there was an error and a reclassification by the engineer of the railroad company, by which the principal contractors, Bernard Corrigan & Company, received pay for 9,292 cubic yards which had originally been classified as loose rock, and which was later classified as granite, amounting to $6,504.40, and that this change was made in work done by Carlile, Corrigan & Dunne; and demanding judgment for that amount additional.

The chancellor found against the interveners on the final hearing and entered a decree dismissing their complaint, and they appealed to this court.

The first issue of fact presented is whether or not, in the verbal contract between the interveners and defendants, the former were to be bound by the decision and final estimates of the chief engineer of the railroad company, according to the stipulations of the principal contract.

The testimony of several witnesses introduced by the de-

fendants showed that the contract was made with Mr. Dunne, acting for Carlile, Corrigan & Dunne, and tended to establish such a stipulation in the contract. One of the witnesses, the bookkeeper for Bernard Corrigan & Company, testified positively that such was the agreement, and that a written contract was prepared as agreed upon, covering all the terms of the contract, and containing the stipulation, but that Mr. Dunne afterwards declined to sign it for the sole reason that it embraced more work than he was willing to undertake. He testified that the work was agreed to be done under the contract. There are some unsatisfactory features about the testimony of these witnesses, but the testimony is uncontradicted, and we can not say that the chancellor erred in accepting it as true.

Mr. Dunne died before the intervention was filed, but the plaintiff Garvey testified that Carlile agreed that the final estimates of the chief engineer should govern. Carlile did not testify.

The agreement to abide by the decision and final estimates of the chief engineer is binding upon the parties and the decision of the engineer can not be questioned except by showing "fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment." *Hot Springs Railway Co.* v. *Maher,* 48 Ark. 522; *Ozan Lumber Co.* v. *Haynes,* 68 Ark. 185; *Ark-Mo Zinc Co.* v. *Patterson,* 79 Ark. 506, and cases cited.

The complaint of the interveners contains no allegation of fraud on the part of the chief engineer who classified the work and finally estimated it, nor is there any testimony tending to show fraud or mistake except the testimony as to the difference between his classification and those of the engineers subsequently employed by the interveners to examine the work. This is not sufficient to establish fraud or gross mistake, as, to make the most of it, the conflicting testimony leaves in doubt which of the estimates and classifications is correct.

The only remaining question, therefore, is whether or not appellants have been paid for their work in accordance with the final estimates of the chief engineer. The work was completed in May, 1902, and after the estimates and certificates of the chief engineer were furnished to Corrigan & Company, the

principal contractors, the latter sent to appellants a final esti-
mate or summary of the work done by them, showing a total of
$52,925.44 price of work, previous payments $46.059.89, leaving
$6,865.55 balance due. On June 30, 1902, they sent a check to
appellants for this amount, and they now contend that this was
all that was due appellants for work. They contend that the
estimate referred to above was in accord with the final certificate
of the chief engineer, and that the payment closed finally the
transactions between the parties. Appellants refused to accept
the payment in full, but did receive and credit it on the amount
due. It is conceded that when the work was completed the chief
engineer based his estimate and certificate of appellants' work
upon reports and classifications of a subordinate engineer named
Woods; that the sub-contractors expressed dissatisfaction with
the classification, and another engineer named Board was sent to
re-classify the work, and upon the latter's report the chief engineer
changed his classification of 9,292 cubic yards of loose rock into
granite. This change was made in appellants' work and, at
seventy cents per yard, which was the difference in the contract
price between loose rock and granite excavation, made a dif-
ference of $6,504.40. The further question of fact at issue is
whether this change was made before the payment of $6,865.55
or afterwards. If afterwards, appellants are entitled to recover
the additional amount shown to be due in accordance with the
change in the final estimate of the chief engineer, for he was,
as we have already seen, the final arbiter of the difference be-
tween the parties.

We have already called attention to the fact that the check
for this payment was dated June 30, 1902, and the estimate
which accompanied it, though not dated on its face, must have
been of that or prior date as the balance shown thereby to be
due corresponds exactly with the amount of the check. The
only testimony in the record which throws any light on this
point is that of Bernard Corrigan, one of the appellees. His
examination concerning the estimate which accompanied the
check, and which is designated in the records as Exhibit No. 4
to the deposition of witness Donnelly, is as follows: Q. "Is
that estimate or statement the one upon which you settle with
Carlile, Corrigan & Dunne?" A. "I would not say from recol-

lection, but to the best of my opinion it is." Q. "Now, do you know whether that was made out and furnished to Carlile, Corrigan & Dunne, when they got through with their work there, and before the chief engineer had made the changes from loose rock to solid rock granite, which appears in his final estimate?" A. "The first estimate was made on a classification made by Mr. Woods; then Mr. Moliter sent Mr. Beard over the work, at my request, and Mr. Beard, as I remember, raised the estimate in dollars and cents some five or six thousand." Q. "I call your attention to a notation on the margin of Exhibit No. 4, which Miss Dunne, in her deposition, says was made by her; do you know anything about the matter referred to in that notation?" A. "The matter referred to in that notation is the difference in the number of yards of loose rock, under Mr. Woods's estimate and in Mr. Beard's final estimate. On examining this notation and this exhibit, I am satisfied that it was made and furnished to the sub-contractors before the final estimate of the chief engineer was made and before the chief engineer made the change at my request, which I have spoken of, changing loose rock to solid rock granite."

In another deposition he stated that the final estimates of the chief engineer were furnished by them (the principal contractors) in July, 1902, probably about the 22d of that month. It is true that he states in general terms that he settled with appellants according to the final certificate of the chief engineer, but these specific statements in his testimony show that that was not true. If the change in the classification from loose rock to granite was made in July, and after the estimate which accompanied the check was made and delivered to appellants, it necessarily follows that appellants have not been paid for the difference on the second classification, and are entitled to recover it. There is no dispute about the amount, or that the reclassification was as to appellants' work. The only question is whether the settlement represented by the check dated June 30, 1902, included the additional sum due by reason of the reclassification. We think from the evidence that it was not included. The chancellor erred in his finding on this point.

The decree is therefore reversed, and the cause remanded with directions to enter a decree in favor of the interveners for $6,504.40, with interest from date of filing of the intervention.

Opinion delivered June 24, 1907.

McCulloch, J.  Counsel for appellees insist that we reached an erroneous conclusion in finding from the testimony in the record that the reclassification made by the chief engineer of the railroad company, whereby the final estimate of the work performed by Carlile, Corrigan & Dunn, interveners, was changed so as to allow them the additional sum of $6,504.40, occurred after the final payment was made by appellants to the interveners, and was not included therein.  After reconsidering the testimony, we are still of the opinion that the preponderance of the evidence sustains that conclusion, but the question is not free from doubt.  The testimony of Bernard Corrigan, one of the appellees, establishes the fact that the final estimate of the chief engineer showing the change in classification was received by the principal contractors in July, 1902, after the check for $6,-865.55 had been drawn and delivered to Carlile, Corrigan & Dunn, but his testimony is, to some extent, uncertain on this point, as he states in other parts of his deposition that he settled with the sub-contractors in accordance with the final estimates of the chief engineer.  The amendment raising this particular question was not filed by the interveners until after all the depositions in the case had been taken, and no additional proof was taken directed to that issue.  The parties did not, doubtless on that account, develop as fully as they might the proof as to when this charge was made, and whether or not the interveners were given the benefit of the change in classification.

Inasmuch, therefore, as the amendment raising the new issue was not filed until after the taking of proof was completed, we are constrained to believe that the testimony on this point was not developed as fully as it might have been, and that, in the interest of complete justice, an opportunity should be given to both parties to introduce additional testimony on this point.

The decree is therefore reversed and the cause remanded with directions to allow either party to introduce additional testimony upon the issue as to the time when the change in classification by the chief engineer of the railroad company of the work performed by the interveners was made, and whether or

not the payment made by appellees to the interveners included the price of work according to that change, and for further proceedings not inconsistent with the opinion of this court.

To that extent the former judgment of the court is modified, and in all other respects the petition for rehearing is denied.

It is so ordered.