EVANS v. WILLIAMS et al. (No. 5688.)

(Court of Civil Appeals of Texas. Austin. Nov. 8, 1916. On Motion for Rehearing, March 7, 1917. Further Rehearing Denied April 18, 1917.)

1. JUDGMENT ⊛91—CONSENT JUDGMENT—INTENT OF PARTIES.

Where a consent judgment provided that the trustee might sell the lands for the best price obtainable within his discretion, for part cash and the balance secured by vendor's lien notes, the court cannot read into the judgment a provision for sale at the reasonable market value, since the judgment is in effect a contract between the parties which is not ambiguous, and the intent of the parties must therefore be gathered from its terms.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 150.]

2. JUDGMENT ⊛919—SUITS TO ENFORCE—EVIDENCE—FRAUD.

In a suit based on a consent judgment, appointing a trustee to sell lands, in which the judgment creditors alleged fraud by the trustee in making the sale, evidence as to value of the land sold was admissible on the issue of fraud.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1750.]

On Motion for Rehearing.

3. APPEAL AND ERROR ⊛1010(2)—REVIEW—FINDINGS BY TRIAL COURT.

The trial judge is the exclusive judge of the facts, and his finding will not be reviewed, unless it becomes a matter of law, because the finding is without any competent testimony to sustain it, or so overwhelmingly against the preponderance of the testimony as to amount to a lack of testimony.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3982.]

4. JUDICIAL SALES ⊛15—EVIDENCE—REPORT BY TRUSTEE.

In a suit by a judgment debtor to compel the trustee, appointed by the judgment to sell certain lands to pay the judgment, to convey to the debtor the residue of the lands after the sale of a portion for a price sufficient to pay the judgment, the cash payment having been advanced to the purchaser by the judgment debtor, which sale the judgment creditors refused to approve, because the price was so exorbitant that there was not sufficient security for the deferred payments, evidence held to sustain the trial court's finding that the trustee did not report to the creditors that he had in the exercise of his discretion approved the sale, so as to require the creditors to elect whether to ratify the sale and accept the cash payment and notes, or to take the land at the price stated, but that the trustee had merely reported that he had received an offer to purchase, and had asked the creditors for advice with reference thereto.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. § 31.]

Appeal from District Court, Travis County; Chas. A. Wilcox, Judge.

Action by W. O. Evans against Lizzie E. Williams and others. Judgment for defendants, and plaintiff appeals. Judgment affirmed on rehearing.

Nelms & Platt, of Groveton, W. B. Teagarden, of San Antonio, and W. B. Garrett, of Austin, for appellant. Hutcheson & Hutcheson, of Houston, for appellees.

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

## Findings of Fact.

JENKINS, J. On May 11, 1914, the following agreed judgment was entered in the district court of Travis county:

"Lizzie E. Williams et al. v. W. O. Evans et al.
"No. 29979. May 11, 1914.

"This cause being on trial, the parties, plaintiffs and defendant, on this day came before the court and announced to the court that they had agreed on a judgment to be entered in this cause, whereupon the cause was withdrawn from the jury, and the following judgment is entered by agreement of the parties and adopted by the court, to wit: That judgment be and the same is hereby rendered in favor of the plaintiffs Lizzie E. Williams and H. G. Williams for the sum of $37,000, the same to bear 6 per cent. interest from this date, and the same to be a charge and lien against the following described lands and real estate, situated and lying in Trinity county, Tex., to wit: [Here follows a description of 14 tracts of land, including the 875 acres hereinafter mentioned, and aggregating nearly 4,000 acres.] And that said land shall be sold and the proceeds thereof applied to the payment and discharge of the amount of said judgment above stated, with interest.

"It is further ordered and decreed by the court, as per said agreement, that L. P. Atmar, of Groveton, Trinity county, Tex., be and he is hereby appointed as special trustee to take charge of said lands above described at once and have control of same and to make sales of said lands at private sales for the best price obtainable, within his discretion, and said lands to be sold in bulk or in small tracts, as is deemed best within the discretion of said trustee, and in making sales of said lands, said trustee shall receive not less than one-third cash of the sale price, and the deferred payments to bear not less than 6 per cent. interest and secured by vendor's lien on the land sold, and in the event the said L. P. Atmar should refuse to act as said trustee or become otherwise disqualified, the judge of this court shall appoint a trustee in his stead, who shall have and possess all of the powers as given herein to the said L. P. Atmar. It is hereby made the duty of the said trustee L. P. Atmar or his successor to make report of each sale of said lands, giving the price and name of purchaser, to the law firm of Hutcheson & Hutcheson, of Houston, Tex., who shall at once approve the sale or take the property at same price and credit on judgment. It is further ordered and decreed that the said trustee L. P. Atmar, or his successor shall have 12 months from this date within which to sell said lands as provided herein, and if all of said lands are not sold within said time any balance left shall be deeded to plaintiffs in full satisfaction of said judgment.

"It is also ordered and decreed by the court that, as each sale is made by the said trustee, the amount of the cash money received, and the amount of the purchase-money notes, shall then and there be applied and operate as a credit on the sum above stated as the judgment of the court, and that the said cash, together with the notes secured by vendor's lien, indorsed by said trustee without recourse, shall be delivered to the said H. G. Williams and Lizzie E. Williams, or their attorneys of record Hutcheson & Hutcheson, less such reasonable expenses as may be necessary to incur by said trustees in the payment of taxes or other charges incident to sales, not including any commissions.

"It is further ordered and decreed by the court that in the event the proceeds of the sale of said lands, including cash and vendor's lien notes, should amount to more than enough to pay off and satisfy the said sum above stated, and accrued interest, after the payment of such expenses as above referred to, then any such sum over and above said amount and accrued interest

shall be paid and turned over to the said defendant W. O. Evans by the said trustee.

"It is further ordered and adjudged by this court that in the event said lands should not sell for enough to pay this judgment and interest and the costs incident to the sale of said lands as above mentioned, the said W. O. Evans shall be and he is hereby fully and absolutely discharged from any and all further liability under this judgment, and in no event is he to be held personally liable on said judgment.

"It is further ordered by the court that the title to all of said land is hereby vested in the said L. P. Atmar, trustee, or his successor, for the purpose of selling said lands, and carrying out this decree; all the title and interest in said lands being hereby divested out of the said Lizzie E. Williams and H. G. Williams and the said defendant W. O. Evans for said purpose.

"It is further ordered and adjudged by the court that the plaintiffs Lizzie E. Williams and H. G. Williams take nothing as against the defendant W. O. Evans in their suit on the said note for $6,000 and on the note of $12,500 sued on in this case, and as to both of said notes and indebtedness the same are hereby canceled by the court and ordered surrendered to said W. O. Evans; and it is further ordered that the policy of insurance on the life of said W. O. Evans for the sum of $12,500 in —— being No. ——, be and the same is hereby ordered by this court to be surrendered and delivered by the plaintiffs to the said defendant, W. O. Evans, free from any and all liens or incumbrances whatsoever, by reason of the execution and delivery of said note for $12,500, dated September 18, 1911, or otherwise.

"It is further ordered and adjudged by the court that in the event it should develop that there are any claims or charges whatever against the real estate above described, such as taxes, vendor's lien notes, or interest charges, up to this time, then all such charges or claims shall be and are hereby charged against and applied as a credit on the judgment above stated herein.

"It is further ordered and adjudged by the court that the plaintiffs Lizzie E. Williams and H. G. Williams take nothing as to their suit against the defendant A. J. Wood, and that said defendant A. J. Wood go hence without day and recover all costs herein.

"It is further ordered by the court that the plaintiffs herein and the defendant Evans each pay one-half of the costs herein."

This suit was brought by appellant to enforce said judgment, by compelling appellee Lizzie Williams (H. G. Williams having died) to accept 875 acres of said land in discharge of said judgment. Appellant alleges that the trustee Atmar accepted said trust, and within the year mentioned in said judgment sold the 875 acres of land, referred to, to one John Shupak for the sum of $45 per acre, one-third cash, the balance by vendor's lien note, payable on or before 10 years after date, bearing interest at the rate of 6 per cent. per annum; that said sale was made by said trustee for the best price obtainable within his discretion; that on the same day he reported said sale to the firm of Hutcheson & Hutcheson, stating the price and the name of the purchaser; that said Hutcheson & Hutcheson and appellee Lizzie E. Williams refused to approve said sale, and have refused to take said land at the price offered for the same.

Atmar, who was made a party defendant, answered, disclaiming any interest in the litigation, and that his connection there-

with was in accepting a proposition to purchase the 875 acres by Shupak, which deal was never closed on account of the objections thereto by Hutcheson & Hutcheson and appellee Lizzie Williams, and that he has in his possession no money arising from said contract.

J. C. Hutcheson, Sr., J. C. Hutcheson, Jr., and W. Palmer Hutcheson, composing the law firm of Hutcheson & Hutcheson, in addition to a general demurrer and general denial, answered that they had no financial interest in the judgment of the district court of Travis county hereinbefore set out, nor in the lands involved in this suit, and that their action in reference to the matters complained of was in the capacity of attorneys and representatives of appellee.

Appellee Lizzie Williams, in addition to a general demurrer and general denial, answered that, if the trustee Atmar did approve the offer of John Shupak, submitted to him on April 12, 1915, that he did not, as required by the decree, make report of said sale of said land, and did not therefore invoke the action on the part of said firm with knowledge that the offer submitted to them was accepted by the trustee, and that they were therefore not required to either approve the same or take the property at the price offered and credit the same on the judgment. On the contrary, that the only information given to them by the trustee was that an offer had been made, and that their opinion on the matter was desired, and that the report made by the trustee was intended to have that effect, or else was fraudulently or carelessly worded, and thus failed to reveal the true state of facts, and that they never construed said report as an attempt on the trustee's part to report said offer to them for their approval, and that they did not understand that the said trustee had approved such sale, nor that they were required to exercise their election by approving the same or taking the land at the price offered. Appellee further alleged that, even if said offer was approved by said trustee, it was not such an offer as was contemplated by the decree, for the reason that the actual purchase price contemplated to be paid by the purchaser was $26,250, and that the so-called one-third cash was a sum of money contributed by appellant for the purpose of enabling Shupak to apparently comply with the terms of the decree in the payment of one-third cash, and asked that, if the court should find that the trustee otherwise complied with the terms of the agreed judgment, it find that the only sum offered for said land was $26,250, and that after crediting the same on the judgment there will be left due $13,125, and that by the terms of the judgment, this amount not having been paid prior to the expiration of the year, as therein provided. appellee is entitled to the remainder of the land.

Appellee further alleged that so much of the agreed judgment as authorized the trustee At-mar to make sale of said land at private sale for the best price obtainable within his discretion only authorized a sale which would represent the fair and reasonable market value of the land sold, so that the vendor's lien notes to be credited on the judgment would be amply secured in the event of default by the purchaser, and that it did not authorize the trustee to sell said lands or any part thereof in excess of the market value of the land, and that Atmar, if he approved said offer, did so in violation of the power conferred upon him by said decree, and in fraud of the rights of the judgment plaintiff, because the proposed purchaser was not such a party as could in the proper exercise of his discretion as a reasonably prudent man, have justified the said Atmar in believing that the said deferred payments would be paid, he being a man of very little means, and his financial status at that time being wholly insufficient to guarantee, or even indicate, that said payments would be made; that in fact the 875 acres of land were of the value not to exceed $8 to $10 per acre; that if Atmar did in fact approve and accept said offer at the time it was made to him, such action on his part was the result of a fraudulent conspiracy between the said Atmar and the said Evans and the said Shupak to deprive the judgment plaintiff of her just rights; and that the appellant, the trustee Atmar, and the said Shupak entered into a fraudulent conspiracy to deprive appellee of such rights.

The court, trying the case without a jury, filed its findings of fact and conclusions of law as follows:

### "Findings of Fact.

"(1) I find that on the 11th day of May, 1914, there was entered in this court, in cause No. 29,979, the judgment and decree set out as an exhibit to plaintiff's petition and introduced in evidence in this case; reference being made to said judgment for the terms thereof.

"(2) I find that L. P. Atmar, appointed therein as trustee, accepted the trust imposed upon him by the terms of said judgment.

"(3) I find that the 12 months fixed in the decree, during which time the trustee, L. P. Atmar, should make sales, expired on the 11th day of May, 1915, without any sale of said land or any part of same having been made.

"(4) I find that a short time prior to April 12, 1915, the said Evans, fearing that the time during which sales might be made would expire without sufficient sales having been made to pay off said judgment, and for the purpose of attempting to satisfy in full the judgment held by Mrs. Williams against him, and at the same time to have released to himself, clear of such lien, the bulk of the lands covered by such lien, procured one Shupak to agree to purchase 875 acres of said land upon the following terms, to wit: That the said Shupak should purchase 875 acres of said land for a consideration of $45 per acre, and the said Evans was to make a present to the said Shupak of the sum of $13,125, which sum the said Shupak would tender as the one-third cash payment on said land, as provided by the decree; for the balance of the agreed purchase price for said land said Shupak was to execute a note due on or before 10 years after date, bearing 6 per cent. interest, and to be secured by a vendor's lien upon said 875 acres of land. It appears that it was

contemplated by said parties that the interest on said note should be payable annually, but it does not appear whether or not said notes should provide for the maturing of the principal of same in the event default should be made in the payment of any installment of annual interest.

"(5) I find that on the 12th day of April, 1915, said Evans and Shupak approached the trustee, Atmar, and reported the terms of the above agreement to him, at the same time tendering to the said trustee a sight draft drawn by Evans upon his father for the amount of the one-third cash consideration.

"(6) I find that said Atmar, trustee, agreed to report said proposed sale to the firm of Hutcheson & Hutcheson for their approval, and that said trustee at such time was willing to make such sale, provided the firm of Hutcheson & Hutcheson approved the same; but said trustee did not attempt to exercise any discretion in such matter, but referred the whole matter to the firm of Hutcheson & Hutcheson, with the intention of being guided by their discretion and their judgment in determining whether or not such contemplated sale should be made.

"(7) At the time such offer was made to the trustee, and submitted by the trustee to Hutcheson & Hutcheson, I find that the reasonable market value of said 875 acres of land was approximately $20 per acre, based upon a sale for cash, or for one-third cash, as provided by the decree, and that the sum of $45 per acre, as contemplated in the offer above referred to, was grossly excessive, and that such facts were known at the time to Atmar, the trustee, and also to Evans and Shupak.

"(8) I find that the firm of Hutcheson & Hutcheson, upon receipt of the trustee's report of such proposed sale, refused to approve same, on the ground that the proposed price to be paid for said land was grossly excessive and fictitious, and because the notes which they would be required to take for the deferred payments would not be adequately secured. I further find that said firm of Hutcheson & Hutcheson acted in the utmost good faith in refusing said offer, and that in refusing same they had no intention of gaining any undue advantage over said Evans.

"(9) I find that, had said proposed sale to Shupak been made, the one-third cash proposed to be paid, together with the reasonable market value of said 875 acres of land, added to all of the property owned by Shupak subject to execution, would not have equaled the amount of the principal and interest due Mrs. Williams upon said judgment, and said transaction would have resulted in releasing from the operation of her lien much the larger portion of the lands covered by same, and at the same time would have required her to accept as security for her debt a tract of land entirely inadequate as security, based upon market values at the time.

"(10) I find that, at the time said offer was made by said Shupak, he, the said Shupak, hoped to be able to colonize said 875 acres of land with Bohemians, selling the same for a nominal cash payment, with deferred payments extending over a long period of time, and hoped by making such sales and by having such purchasers cultivate and improve said lands so as to enhance the value thereof as to be able in the course of 10 years to provide for the payment of the vendor's lien note proposed to be given by him. However, I find that the ability of said Shupak to make such deferred payment depended upon such problematical and future contingencies as to render it entirely uncertain, and such security entirely inadequate.

"(11) I find that it was not the intention of the trustee, Atmar, in submitting to Hutcheson & Hutcheson the proposition made to him by Shupak and Evans, to place said Hutcheson & Hutcheson upon their election of either approving such proposed sale or themselves taking the land at the proposed price, and that said firm of Hutcheson & Hutcheson, upon receipt of such proposition, did not know or consider that they were being called upon to make such election.

"(12) I find that —— Evans, against whom a draft for $13,125 was drawn, was solvent, and was good for the amount of said draft, and that said draft was considered by L. P. Atmar, trustee, at the time it was delivered to him, as the equivalent to cash, and that no objection was made to said transaction on the ground that the actual cash was not tendered. I find that the amount of said draft was equal to one-third of the purchase price of the 875 acres at $45 per acre.

"I further find that on April 12, 1915, the amount of the judgment and interest was $39,035, and that 875 acres of land, at $45 per acre, amounted to the sum of $39,375.

### "Conclusions of Law.

"I. I conclude that it was the intent and meaning of the decree appointing Atmar trustee that the said trustee should be empowered to make only such sales as that the land sold should be reasonably worth one-third more than the amount of the deferred payments due thereon, or at least that the land so sold should be worth a reasonable margin over and above the amount of the deferred payments, and that the trustee had no right or power to make any binding contract of sale at such an excessive or fictitious price as would leave no reasonable margin of security for the protection of the deferred payments.

"II. I further conclude that the proposed sale to Shupak, viewed in the light of all the facts, constitutes, if not an actual, at least a legal, fraud upon the rights of the defendant Mrs. Williams, and I conclude that the firm of Hutcheson & Hutcheson and Mrs. Williams had the legal right under the decree to disapprove and reject said proposed sale, without being put to their election to take the land at the price offered, and that such rejection did not operate to their prejudice in any particular.

"III. I further conclude that, the year during which said trustee was to make sales having expired without any sales having been made, under the terms of the decree the defendant Mrs. Williams is entitled to recover, as against the plaintiff Evans and the defendant L. P. Atmar, trustee, the title and possession of all said lands, and that the plaintiff Evans should take nothing by his suit.

"C. A. Wilcox, District Judge."

The findings of fact and conclusions of law and the judgment of the court were duly excepted to, as was also the action of the court in overruling appellant's motion for new trial.

The uncontroverted facts show: (1) The entry of the agreed judgment, as above set out; (2) that Atmar accepted said trust; (3) that on April 12, 1915, within 12 months from the date of said judgment, Shupak and Evans approached the trustee and stated to him that Shupak was willing to purchase 875 acres of said land at $45 per acre, and to pay one-third of the purchase price in cash, and give his vendor's lien note for the balance, due on or before 10 years after date, with interest at the rate of 6 per cent. per annum. It was stated to the trustee at the time that appellant had made a present to Shupak of the one-third cash, in order to enable him to make such purchase, the purpose of Evans in so doing being to enable the purchaser to make the one-third cash pay-

ment, and to save the remainder of his land, as provided in said judgment.

The evidence shows that Evans had been active in trying to assist Atmar to find a purchaser or purchasers, and that he was unable to do so by reason of the fact that none of the parties who desired to purchase any of said land were able to make the one-third cash payment. The one-third cash payment of $13,125 was deposited with Atmar, and he reported said sale to Hutcheson & Hutcheson, giving the name of the purchaser and describing the land sold, and asked for their approval of the sale. Hutcheson & Hutcheson refused to approve said sale.

The third finding of fact by the court, as above set out, is that Atmar did not make a sale of any part of said land prior to the 11th day of May, 1915. This is true in the sense that he did not execute any deed to any of said land; but he was not authorized by the decree to execute a deed without the approval of Hutcheson and Hutcheson. He made a contract for the sale of said 775 acres, which was all that he could do until such sale was approved; and, as the court finds in its sixth finding of fact, the trustee was willing to consummate such sale, provided the same was approved by Hutcheson & Hutcheson.

So much of the sixth finding of fact by the court, that the trustee did not attempt to exercise any discretion in such matter, but referred the whole matter to the firm of Hutcheson & Hutcheson, is not sustained by the evidence.

Witnesses vary greatly as to the market value of the land, but the evidence is sufficient to justify the finding of the court that its market value was approximately $20 per acre at the time Shupak agreed to purchase the same. The evidence further shows that Shupak was a Bohemian engaged in the land business, and that his purpose was to clear the land and put the same in cultivation, with a view of selling the same to Bohemians on long time at an advanced price, and that he acted in good faith in the matter.

The eleventh finding of fact by the court, that it was not the intention of the trustee, Atmar, in submitting to Hutcheson & Hutcheson the proposition made to him by Shupak and Evans, to place said Hutcheson & Hutcheson upon their election of either approving such proposed sale or themselves taking the land at the proposed price, is not sustained by the evidence. We think so much of said finding as states that the firm of Hutcheson & Hutcheson, upon receipt of such proposition, did not know or consider that they were being called upon to make such election, is sustained by the evidence.

## Opinion.

[1] The first conclusion of law filed by the court is to the effect that the meaning of the decree appointing Atmar trustee was that

he should be empowered to make such sales as that the land sold should be reasonably worth one-third more than the amount of due deferred payments thereon. This conclusion of law is, in effect, that the decree required the trustee to sell the lands at their reasonable market value. This is reading into the decree a clause not contained therein. This judgment is a contract between the parties, and we do not think it is ambiguous in this regard. It plainly states that the land is to be sold by the trustee "at private sales for the best price obtainable within his discretion," and that said land shall be sold in bulk or small tracts, "as is deemed best, within the discretion of said trustee." Where a contract is free from ambiguity, the intent of the parties must be gathered from its terms. Curtain v. Churchhill, 126 Mo. App. 462, 104 S. W. 476. It was held in Kelly v. Corrington, 105 S. W. 1155, that where a party contracted to use his best judgment in efforts to furnish water, if he did so, he is not responsible for failure to furnish water, though his judgment may have been at fault. As between the parties, courts do not inquire whether they contracted wisely or foolishly. Hansen v. Yturria, 48 S. W. 795. The court cannot add to or take from an unambiguous contract. St. Louis v. Ry. Co., 228 Mo. 712, 129 S. W. 691. When parties agree that a matter arising under a contract shall be left to a third party, the decision of such party, in the absence of fraud or such gross mistake as to imply a failure to exercise any judgment in the matter, is binding upon the parties. Jones v. Gilchrist, 88 Tex. 88, 30 S. W. 442; Buchanan v. Gibbs, 156 S. W. 914; Zinc Co. v. Patterson, 79 Ark. 506, 96 S. W. 170; Carlile v. Corrigan, 83 Ark. 136, 103 S. W. 620; Railway Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255.

[2] The appellant objected to all testimony with reference to the market value of said land, for the reason that the same was irrelevant and immaterial; and but for the allegation of appellees that the trustee, Atmar, in making the sale to Shupak at a price far in excess of the value of the land, was guilty of actual fraud, we would sustain appellant's assignments of error with reference to the admission of such testimony. We think that the testimony with reference to the market value of the land was admissible upon the issue of fraud on the part of the trustee, but for no other purpose. The court did not make a finding upon the issue as to whether the trustee was guilty of actual fraud, but only found that the contemplated sale at $45 per acre was constructive fraud. There was evidence which would have supported a finding that the vendor's lien to be executed by Shupak was good security for the amount of said note; and as Atmar was to exercise his discretion in making such sale, if he did so in good faith, there could be no constructive fraud. If he

did not act in good faith, but entered into a conspiracy, as alleged by appellees, to defraud Mrs. Williams of her security for her judgment, the transaction would be void.

For the reasons stated, the judgment of the trial court herein will be reversed, in order that the issue of fact as to the alleged fraud of the trustee may be determined by the court or a jury. By reason of the fact that the time in which the trustee was permitted to make sale having expired, and by reason of the further fact that the offer of Shupak not having been accepted, and the cash deposit made by him having been withdrawn, if judgment should be rendered for appellant, as prayed for by him, it would result in compelling Mrs. Williams to accept the land without the cash payment or the notes that were to be executed being received by her. This might work a hardship upon her, and would do so, if the land is worth no more than $20 per acre. From an equitable standpoint, she ought not to be compelled to receive said land in full payment of her judgment, if she and her attorneys acted in good faith in the matter, believing that a conspiracy had been entered into to unjustly deprive her of the security for her debt. On the other hand, if this transaction was in good faith on the part of Evans and Shupak and the trustee, to compel Evans to lose all of his land by reason of the time having expired in which the trustee could sell the same would seem to be inequitable as to him. The trial court, sitting as a court of equity as well as of law, we think has power to adjust the equities between the parties hereto; and appellant prayed that the court should do so, if it did not sustain his view of the transaction.

We will not undertake to suggest to the trial court what its decree should be in the event it is found that all parties acted in good faith in reference to this matter; but it appears to us that, if all parties acted in good faith, justice might be done by giving a reasonable time in which Shupak might renew his offer, and perhaps in that event that appellee Williams be compelled to accept the one-third cash payment and the vendor's lien notes, or, if Shupak should now be unable or unwilling to renew his offer, that the trustee be given a reasonable extension of time provided in the decree for the sale of the land mentioned in said decree. But for the fact that there is an issue of fact remaining undetermined by the trial court, as herein stated, we would be inclined to reverse and render this judgment as above indicated, or, at least, we would make some effort to adjust the equities between the parties. For the reasons stated, the judgment of the trial court is reversed, and this cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

### On Motion for Rehearing.

[3] As will be seen by reference to the findings of fact by the trial court, set out in our opinion herein, the court, in effect, found that the trustee, Atmar, never accepted the offer of Shupak, and reported to Hutcheson & Hutcheson that he had sold the 875 acres of land at the price and upon the terms stated, and called upon them to make their election to accept the proceeds of such sale, and credit the same on the judgment, or to take said land at the price offered, as under the terms of the agreed judgment he might have done in the exercise of his discretion, and in the absence of fraud. The finding of the trial court is, in effect, that there was no contract of sale, but only a report of an offer, as to which the trustee sought the advice of Hutcheson. The effect of our findings of fact is that these findings of the trial court were not supported by the evidence. In this, upon further examination of the record, we have concluded that we were in error. If there is any competent evidence to sustain the findings of fact by the trial court, it is our duty to sustain the same. The issues of fact are for the trial court. The jury, if there be one, and, if not, the judge trying the case, are the exclusive judges of the facts proven, and their finding will not be reviewed by an appellate court, unless it becomes a matter of law by reason of such finding being without any legal testimony to sustain it, or so overwhelmingly against the preponderance of the testimony as to amount to a lack of testimony to sustain such finding. This proposition is too well established to require the citation of authorities in its support.

[4] On April 12, 1915, the trustee wrote to Capt. Hutcheson, senior member of the law firm of Hutcheson & Hutcheson, as follows:

"Capt. J. C. Hutcheson, Houston, Texas— Dear Sir: I am offered by Mr. John Shupak, a real estate man here, $45 per acre for 875 acres of the H. G. Williams land which is involved in the Williams-Evans matter. The tract of land the party wants to buy is as follows: 369 acres of block No. 6, and 280 acres of block No. 8, said blocks being the original subdivisions of the S. W. ⅓ of the I. Chapa league and 226 acres of the G. C. Shaw survey. Mr. Shupak offers to pay one-third cash, and the balance on or before ten years after date, interest at the rate of 6 per cent. on deferred payments. Kindly advise me your opinion in the matter and authorize me to close the deal, and oblige,

"Yours very truly, [Signed] L. P. Atmar."

To this letter Capt. Hutcheson replied, expressing his surprise that an offer of $45 an acre should be made for the land, saying that it looked to him like a crazy proposition, and inquiring as to Shupak, and closing his letter as follows:

"In the meantime, write me what you think of the proposition, why the man makes such an immense offer at this time, and why he delays the balance of the payment so long."

To this Atmar replied as follows:

"April 26, 1915.

"Capt. J. C. Hutcheson, Houston, Texas—Dear Capt: Your favor of the 24th inst. received, and I am advised that Mr. W. O. Evans is giving to Mr. Shupak the sum of $13,125 to make the cash payment on the 875 acres of land that said Shupak is trying to buy from the Williams estate, and that it is Mr. Shupak's idea to get a bunch of Bohemians on the land, giving them what they make for the first two or three years, and in that way get it in a good state of cultivation, and by these means enabling him to then sell the lands at advanced prices. Mr. Shupak doesn't own any considerable property, but he has been successful in colonizing a good many Bohemians in this section of the country. I haven't a copy of the decree of the court at hand, but from memory I will state that I think it bears date of May 11, 1914. You will kindly advise me when you have had a report from Mrs. L. E. Williams, and oblige.

"Yours very truly, [Signed] L. P. Atmar."

Capt. Hutcheson replied to this letter, declining to advise the deal, stating, among other things:

"That if the sale had been made under the terms of the judgment, Mrs. Williams would have received about $13,125 in cash, and she would credit, not only this $13,125 on the judgment, but also the balance of $26,150 on account of these notes, made on an exaggerated scale of prices for the land, and the vendor's lien on which it should operate, and they would not possibly have realized more, according to my information as to the lands, than $7,500 to $10,000 on the market, if she had really been selling it, and would have had an excess judgment against a pauper for the whole value of the notes for Evans' debt, and he would have had his judgment canceled, all of which would have been an iniquity which it is impossible for me to conceive of."

On May 11, 1915, W. O. Evans wrote the trustee, demanding all of the land except 875 acres be deeded to him. On the same day the trustee wrote to Capt. Hutcheson, informing him of this demand, and that one-third of the purchase money had been tendered by Shupak at the time he offered to purchase the land. To this Capt. Hutcheson replied, quoting from the first letter written him by Atmar, and saying:

"Now there is no allusion to anything but an offer by him, and no recital of a tender, nor is there any statement that you accepted the offer or the money subject to my approval, because in your letter you asked my views about it, and stated nothing that you had done, other than receive their offer"

—and asking for further information with reference to the tender of one-third of the purchase money, and offering to sell to Mr. Shupak the 875 acres for the cash sum of $13,125, without requiring him to execute any note for the balance of the purchase money, $26,150, and suggesting that the matter be taken up with Judge Wilcox, for him to interpret the judgment and the effect of this offer. This offer to sell the 875 acres was based on the theory that, the time having expired in which the trustee was to sell the lands, they became the property of Mrs. Williams. To this latter suggestion the trustee, Atmar, agreed.

Thereupon Evans filed suit in the district court of Trinity county to require the trustee to deed him the entire tract of land, less the 875 acres, making Mrs. Williams and Hutcheson & Hutcheson parties to the suit. Hutcheson & Hutcheson filed pleas in abatement for all parties. Mr. Palmer Hutcheson, a member of the law firm of Hutcheson & Hutcheson, went to Groveton, the county seat of Trinity county, to present the pleas in abatement, and prepared an answer for Mr. Atmar, to be filed in the case, should the pleas in abatement be overruled. This answer was submitted by Mr. Hutcheson to Mr. Atmar, and Mr. Palmer Hutcheson testified on the trial of this case with reference to the same as follows:

"I went to Mr. Atmar's office and explained to him that it was possible that the pleas might be overruled, and that, if so, it would be necessary to file answers at once for all defendants, to prevent default from being taken. * * * Mr. Atmar took the pleadings, and saw that the first two paragraphs were either copies literally or in substance of the plea in abatement, and read the third paragraph in my presence, and considered it before me, for some little time, and then made the statement that he did not like in this answer the statement 'that the said lands only had a reasonable market value of approximately $4 per acre.' I then took a pencil and put a parenthesis around that, and asked him if the balance was satisfactory. He then looked at it more carefully, if possible, and said that he preferred not to make the statement in the answer 'that the price offered by the said Shupak was far in advance of the actual value of the lands involved,' which immediately precedes the statement that they were only worth about $4, for the purpose of maintaining, as much as possible, a neutral attitude in this case, and merely presenting the facts as to what he had done, without going into any question as to the value of the lands. I said, 'All right, Mr. Atmar,' and then extended my paragraph—my parenthesis—so as to include the words 'but he alleges that the price offered by the said Shupak was far in advance of the actual value of the lands involved.' I then asked Mr. Atmar if that was satisfactory, and he said that it was. I said, 'Now, Mr. Atmar, those pleas have to be ruled on, and as this is marked up some, I will not ask you to sign this in its present form, unless it becomes necessary at the time the pleas are overruled; you are right here, and I can get you to sign this, if I don't get time to have it recast; if the pleas are sustained, the appearance day is off a month, and I will send you the answer, with corrections made, at my leisure,' to which he assented at the time."

This answer, after striking out that part objected to by Mr. Atmar, contained the following:

"With reference to the allegations of plaintiff's petition as to an offer of purchase of certain lands by John Shupak, this defendant says it is true that such offer was made, as described in plaintiff's petition, but states that he never, in the exercise of his discretion or otherwise, approved the offer made by said Shupak, and never agreed to sell or sold the lands offered to be purchased, and that he merely submitted said offer to the firm of Hutcheson & Hutcheson, as provided by the decree, who rejected the same, all of which is fully evidenced by the correspondence passing between the parties hereinbefore referred to, and which represent the only negotiations between said parties, ma-

terial to and relevant to said proposed offer of purchase."

Mr. Palmer Hutcheson further testified:

"Now, at the same time that I was in conversation with Mr. Atmar, I began discussing with him the question of the values of these lands independently of what he was willing to say in his answer, and I asked Mr. Atmar whether or not he actually thought those lands worth what was offered; he said he did not. I then asked Mr. Atmar what he thought was the value of those lands, and, after some meditation on the thing, he said he thought they were worth about $15 per acre; that is, the lands offered to be purchased by Shupak. I then said: 'Well, Mr. Atmar, regardless of what is the legal effect of the decree, if this decree had meant, and you had known that it meant, for you to pass on the matter in the exercise of your discretion, and that you should only submit to the firm such matters as you yourself approved of, or they would die a death without ever being submitted to the firm, what would you have done?' He said, 'I could not have approved it.' I said, 'Could you, in justice to Mrs. Williams—you represent both parties—could you, in connection with your duties under this decree, have approved it, and would you?' and he said, 'No.'"

Mr. Palmer Hutcheson testified that he explained to Mr. Atmar that, in the event the pleas in abatement were overruled, it might be necessary to file an answer immediately to prevent judgment by default, and, if so, he would file for Mr. Atmar the answer which he had drawn with the erasures therein; but, if it was not necessary to file the same at that time, he would rewrite it, leaving out the objectionable part, to which Mr. Atmar agreed.

We think the testimony above set out is sufficient to sustain the finding of the court that there was, in fact, no contract of sale made to Shupak, but only an offer, the acceptance of which depended on its being approved by Hutcheson & Hutcheson.

For the reasons stated, the motion for rehearing is granted, and the judgment of the trial court is affirmed.

Motion granted. Judgment affirmed.